359 A.2d 315.

STATE *vs.* STEPHEN G. ROLLINS *et al.*

JUNE 21, 1976.

PRESENT: Bevilacqua, C. J.. Paolino, Joslin, Kelleher and Doris, JJ.

PAOLINO, J. On December 15, 1972 the grand jury for the counties of Providence and Bristol returned a six-count indictment charging that on November 25, 1972 the defendants Charles C. M. Marchetti, Stephen G. Rollins, and Richard A. Kelley committed the following offenses: Count I. Assault on a Correctional Officer; Count II. Assault with a Dangerous Weapon; Count III. Conspiracy to Kidnap; Count IV. Kidnapping; Count V. Conspiracy to Extort; and Count VI. Extortion. Marchetti and Rollins were tried separately, but the evidence presented at both trials was substantially the same. Marchetti was tried first and was found guilty on Counts I, II, IV and VI. A motion for

judgment of acquittal was granted as to the conspiracy counts.

Rollins was tried later and found guilty on Counts I, IV and VI. Counts III and V were dismissed on a motion for judgment of acquittal and the jury found him not guilty on Count II. Marchetti and Rollins have taken this appeal to which Kelley is not a party.

In each case, a motion for new trial was denied. Kelley pleaded guilty and was sentenced to 8 years on Counts I, III and IV. Marchetti was sentenced to 20 years and about a month later, Rollins was also sentenced to 20 years.

The record discloses the following pertinent facts. Robert J. Picard, a uniformed correctional officer at the Adult Correctional Institutions was called as a witness by the state. His testimony was, in substance, as follows: On November 25, 1972, in the forenoon while working the first shift at the Behavioral Custodial Unit (B.C.U.) of the prison, defendant Charles Marchetti requested permission to be let out of his cell to wash his clothes. Officer Picard granted Marchetti's request and then Marchetti told him that his bucket was in defendant Rollins' cell. Officer Picard accompanied Marchetti to Rollins' cell and unlocked it to permit Marchetti to get his bucket. As soon as Officer Picard opened or unlocked the cell, Rollins jumped out, grabbed the officer by his neck, and placed a sharp metal object — it looked like a screwdriver — to the officer's head, and demanded the keys to the cellblock. Picard complied with the prisoners' order to enter Rollins' cell and he was locked in. Picard then heard the sounds of other cells being unlocked, inmates being let out of their cells, and the piling of furniture at one of the doors connecting B.C.U. with the adjacent wing of the prison.

Robert Perron, another correctional officer, testified that he received a telephone call from Rollins, that the latter demanded to speak with prison officials, and warned that

possible bloodshed would result if the State Police were called in.

Anthony Travisono, who was then Director of the Department of Corrections, testified that he received a telephone call from an assistant warden informing him that a hostage was being held in B.C.U., and that the inmates were demanding that he personally appear and respond to their grievances. Mr. Travisono went to the Adult Correctional Institutions, was briefed by other officials at the prison, and subsequently conferred with the inmates. The officials, out of fear for the safety of Officer Picard, agreed to meet all but two of the prisoners' list of nine demands. The Superior Court justice who presided at Marchetti's trial sustained the state's objection to a question put to Mr. Travisono as to whether a promise of immunity from prosecution had been given by Mr. Travisono. However, the trial justice who presided at Rollins' trial entertained an offer of proof after an attempted stipulation failed to materialize.[1] Officer Picard was released after Mr. Travi-

---

[1]The offer of proof appears in the following colloquy:

"Mr. Rao: Mr. Travisono would testify that on November 25th at the Adult Correctional Institution, specifically, at the BCU section of the A.C.I., which at that time housed Defendant Stephen Rollins, that Mr. Travisono, in his capacity as Director of Rehabilitative Services, so-called, speaking on behalf of or speaking in his official capacity, promised the immunity from all prosecution resulting from the incident that took place at the A.C.I. at the time and place in question. In addition, he would testify that not only did he grant immunity from all prosecution. legal prosecution, so-called, he also would testify that he promised this defendant that there will be no reprisals at all at the A.C.I., taking away privileges, or taking away the privileges of the inmates because of this incident.

"The Court: You mean this. Mr. Travisono would testify that he was head of the Department of Corrections.

"Mr. Rao: Yes. I said Rehabilitative Services; I'm sorry.

"The Court: And you indicated to me in Chambers that he would testify that he promised Mr. Rollins that if the Defendant released the hostage, there would be no prosecution * * *."

sono and the warden acceded to seven of the nine demands made by the inmates.

When Marchetti took the stand during the defense phase of Rollins' trial, the state, during cross-examination, attempted to impeach him by showing his conviction on the charges contained in this appeal. The following colloquy took place:

"Q * * * On the charges that were brought against you, you've received your trial already, haven't you?

"A Oh, yes.

"Q And you were found guilty by a jury, weren't you? "Mr. Rao: Your Honor, please, objection; and I have a motion."

After argument of counsel, the trial justice overruled dedendant's objection and denied his motion to pass the case.

After he was sentenced to 20 years, Rollins filed a Super. R. Crim. P. 35 motion to reduce sentence. The denial of this motion is the basis of defendant's argument that the trial justice committed an abuse of discretion.

## I

These appeals present three issues. The first is common to both Marchetti and Rollins. They argue that the Attorney General cannot prosecute a defendant after a promise of immunity was given prior to indictment. They contend that he was estopped from prosecuting these cases by virtue of the words and action of Mr. Travisono in his capacity as the Director of the Department of Corrections.

As pointed out above, the trial justice in the Marchetti case sustained an objection by the state to a question put to Mr. Travisono about a promise of immunity to those who participated in the incident upon which Marchetti's conviction was based.

The Rollins case, as mentioned previously, involved a motion to dismiss based upon an offer of proof by his coun-

sel to the effect that if Mr. Travisono was called, he would testify that he promised immunity from all prosecution resulting from the November 25, 1972 incidents at the Adult Correctional Institutions and that he promised Rollins there would be no reprisals at the Adult Correctional Institutions or loss of privileges due to the incident.

We find no merit in any of the arguments made by defendants under this point. Promises extorted through violence and coercion are no promises at all; they are void from the beginning and unenforceable as a matter of public policy.

The defendants' argument that G. L. 1956 (1969 Reenactment) §13-1-1 (Supp. 1975) vests the Director of the Department of Corrections with prosecutorial discretion is baseless.[2] That section merely gives the director power to provide for the internal control and discipline of the inmates. It is well settled in this state that the Attorney General is the only state official vested with prosecutorial discretion. *Rogers* v. *Hill,* 22 R. I. 496, 48 A. 670 (1901).

Nor is there any merit to defendants' attempt to analogize this case with the "lie detector" cases because in those cases the defendant had agreed to something which the law did not require in return for a promise not to prosecute if he passed the test. *See State* v. *Davis,* 188 So.2d 24 (Fla. App. 1966). In the case at bar, we are dealing with coerced promises to induce defendants to do what they were already legally required to do.

---

[2]General Laws 1956 (1969 Reenactment) §13-1-1 (Supp. 1975) reads in pertinent part:

"* * * the director of corrections shall, except as otherwise provided by law, have full oversight, management, control and supervision of the adult correctional institutions * * * and shall, except as otherwise provided by law, have full authority and power to provide for the *control, discipline,* care and education and employment of the inmates of such institutions * * *." (Emphasis added.)

We have considered all of the arguments made by defendants relative to the question of immunity, and, as stated above, find no merit in any of them. We conclude our consideration of this issue by stating that even if the director had the power to make the alleged promises, they would be unenforceable as a matter of public policy because they were secured by violence and coercion.

## II

The issues raised under points II and III of defendants' brief relate only to the appeal of defendant Rollins. As previously stated, when Marchetti, a codefendant in this case, took the stand as a defense witness for Rollins, the state attempted to impeach his credibility by introducing the fact that he was found guilty by a jury on the same charges for which Rollins then stood trial. The trial justice overruled the objection and denied defendant's motion to pass the case. The defendant argues that in so ruling the trial justice committed reversible error because the challenged question was barred from consideration by the jury under the provisions of §9-17-15 which provides that:

> "No person shall be deemed an incompetent witness because of his conviction of any crime, or sentence to imprisonment therefor; but shall be admitted to testify like any other witness, except that conviction or sentence for any crime or misdemeanor may be shown to affect his credibility."

Rollins contends in substance that the word "conviction" as used in §9-17-15 means final conviction and that because an appeal from Marchetti's conviction was still pending at the time of Rollins' trial, there was no such final conviction in this case. The defendant relies on the decision of this court in *State* v. *Marzilli*, 111 R. I. 392, 303 A.2d 367 (1973). In that case the defendant died while his appeal was pending in this court. In our judgment, Rollins' reliance on *Marzilli* is misplaced. That case did not invove the issue of credibility, nor did it involve §9-17-15. *Marzilli* merely

held that the intervening death of a defendant, as a matter of simple justice, dictated the vacation and disolution of any conviction entered against him which was then pending appeal and a reversal and remand with direction to dismiss the indictment. That case does not stand for the proposition that in all cases the word "conviction" means final conviction.

The question before us is what the General Assembly intended when it mandated "* * * that conviction or sentence for any crime or misdemeanor may be shown to affect his credibility." The Legislature did not see fit to limit or qualify the word "conviction" in any way. The language used is clear and unambiguous and expressed a definite and sensible meaning, namely, any "conviction" may be shown to affect a witness' credibility. In the circumstances, that meaning is conclusively presumed to be the one which the Legislature intended and the statute must be applied literally. We cannot change the clear meaning of such language. *Brown & Sharpe Mfg. Co.* v. *Dean*, 89 R. I. 108, 116-17, 151 A.2d 354, 358 (1959). If the Legislature meant final conviction, it would have said so in no uncertain language. Thus, we hold that, as used in §9-17-15, the word "conviction" means any conviction, whether final or not. This conclusion is in accord with the overwhelming weight of authority which holds that the mere pendency of an appeal does not bar use of a conviction for the purpose of impeachment. *See Annot.* 16 A.L.R.3d 726, 728-33; *see also People* v. *Bey*, 42 Ill.2d 139, 146, 246 N.E.2d 287, 291 (1969) and *Suggs* v. *State*, 6 Md. App. 231, 250 A.2d 670 (1969). We also note that this rule has been adopted by the drafters of the Fed. R. Evid. 609(e) which reads:

"Rule 609. Impeachment by Evidence of Conviction of Crime
    \* \* \*

"(e) Pendency of Appeal. The pendency of an appeal therefrom does not render evidence of a conviction inadmissible. Evidence of the pendency of an appeal is admissible."

For the reasons stated, we find no error in the trial justice's overruling of defendant's objection or denial of his motion to pass.

## III

The defendant Rollins' final argument relates to the trial justice's denial of his motion to reduce sentence. At the hearing on that motion, defendant's counsel said, in part:

"I believe that the record may not be as clear as I would like it, in that at pretrial conference or plea bargaining the Attorney General recommended eight years. After trial the recommendation was twenty years. The Attorney General may not have specifically said twenty years, but the Attorney General pointed out that a codefendant after trial was sentenced to twenty years."

Further, he argued that "* * * the trial did not produce any additional facts or circumstances that warranted the more than doubling the recommendation" initially made by the Attorney General and the conclusion was "* * * obvious that the recommendation was increased because the defendant did not enter a nolo plea in the instant indictment."

Finally, he argued that the trial justice should have taken into consideration (1) the fact that defendant's conduct resulted from the failure of the prison authorities to pay any attention to grievances which had been made through proper channels to proper authorities and (2) the fact that defendant had been "* * * punished within the system itself for this very incident that is complained of in the indictment."

The defendant makes the same arguments here as he did before the trial justice and, additionally, argues that the

trial justice at no time addressed herself to the contention made by his counsel that "* * * the trial did not produce any additional facts or circumstances that warranted the more than doubling the recommendation on the part of the Attorney General." The defendant argues in substance that the trial justice abused her discretion. For the reasons that follow, we do not agree with any of the arguments made by defendant under this point.

A reading of the trial justice's decision denying defendant's motion to reduce sentence shows that she considered all of the arguments made by defendant's counsel. She said in part:

"When I imposed the original sentence on Mr. Rollins, it seems to me I made it clear that I was basing my sentence on his prior record, the nature of the offense, his prospects for rehabilitation; and I think I also indicated that he, in a sense, seemed determined to continue to violate the law when and as it suited his purpose. And that is why I made reference to the use of other means for redressing his grievances and his living conditions at the Adult Correctional Institution[s]. I think all of the facts available to me at the time of sentencing support my belief that the defendant was not deserving of any other consideration than I gave him at the time I imposed sentence. I don't think the sentence was unreasonable. It is my view that, under all of the circumstances before me at the time, it was reasonable."

The defendant points to no portion of the transcript to indicate that the sentencing judge took part in plea negotiation or that she promised him an 8-year sentence if he pleaded guilty. All that is before us here is a case where the Attorney General stated that he would recommend an 8-year sentence if defendant were to plead guilty. Nor is there anything in the record indicating that the trial justice threatened defendant with a longer sentence if he were to stand trial and be convicted. As the state points out,

there is nothing in the record to indicate that the trial justice had predetermined a sentence to be imposed in the event that defendant would enter a plea of guilty or that she had increased this sentence upon an unsuccessful defence made at trial.

*United States* v. *Stockwell,* 472 F.2d 1186 (9th Cir.) *cert. denied,* 411 U.S. 948, 93 S.Ct. 1924, 36 L.Ed.2d 409 (1973), upon which defendant relies, is factually distinguishable from the case at bar and therefore of no help to him. In that case the trial judge, prior to the trial, told the defendant that, if he were to plead guilty to one count, he would receive a 3-year sentence, as did a codefendant who pleaded guilty. He added that if the defendant chose to stand trial and was convicted he would receive a sentence of from 5 to 7 years. The defendant elected to stand trial and was convicted and given concurrent sentences of 7 years for the five counts of which he was found guilty. In remanding the case for resentencing, the circuit court held that the sentence could not be sustained when the record left unrebutted the inference that the defendant was punished with a longer sentence because he elected to stand trial.

As we stated previously, it is clear from the record in the case at bar that the trial justice in no way penalized defendant for going to trial before a jury. We believe this to be so notwithstanding the fact that the trial justice did not expressly address herself to defendant's counsel's contention that "* * * the trial did not produce any additional facts or circumstances that warranted the more than doubling the recommendation on the part of the Attorney General." Indeed the record affirmatively shows that she sentenced defendant solely upon the nature of the charges against him, and upon his prospects for rehabilitation, and not as punishment for his going to trial. *See United States* v. *Stockwell, supra.*

In *State* v. *Fortes*, 114 R. I. 161, 330 A.2d 404 (1975), we held that this court has the power to review a sentence alleged to be excessive although within statutory limits, but we pointed out that we should use this power only when the record points convincingly to the conclusion that the sentencing justice has, without justification, imposed a sentence which is grossly disparate from sentences generally imposed for similar offenses. *Id.* at 173, 330 A.2d at 411. On this record we cannot say that the trial justice violated the test set forth in *Fortes,* and, therefore, we conclude that the defendant, Rollins, has failed to establish that the trial justice abused her discretion in denying the motion to reduce sentence.

The appeal of each defendant is denied and dismissed, the judgments appealed from are affirmed and the case is remanded to the Superior Court for further proceedings.

*Julius C. Michaelson,* Attorney General, *Forrest Avila,* Special Asst. Attorney General, for plaintiff.

*William F. Reilly,* Public Defender, *Bruce G. Pollock,* Asst. Public Defender, for defendants.