Everett **WAGNER,** Appellant,

v.

**STATE** of Iowa, Appellee.

No. 83–1334.

Supreme Court of Iowa.

March 20, 1985.

James Cleary, Des Moines, for appellant.

Thomas J. Miller, Atty. Gen., Gordon E. Allen, Sp. Asst. Atty. Gen., and Layne Lindebak, Asst. Atty. Gen., for appellee.

Considered by HARRIS, P.J., and McGIVERIN, SCHULTZ, CARTER, and WOLLE, JJ.

SCHULTZ, Justice.

Applicant Everett Wagner appeals from the district court's dismissal of his application for postconviction relief under Iowa Code chapter 663A. Wagner, an inmate at the Iowa State Penitentiary, challenged the revocation of earned good time pursuant to

Iowa Code section 246.41(5).[1] He contends: (1) the procedures followed in revoking petitioner's good time violated due process in several respects: (a) that his good time was taken away because of his involvement in a hostage situation, but the disciplinary hearing notices contain no allegation of involvement in a hostage situation and the hostage situation was never mentioned at the disciplinary hearing; (b) the State failed to follow its own rules contained in an employee's manual and acted contrary to established policy and procedure; (c) a no reprisals agreement entered into by the warden and the applicant during the hostage incident was breached by the State with respect to applicant when he was disciplined for his conduct arising from such incident; and (d) that the action of the warden and the director of corrections was violative of his right to an impartial tribunal and decisionmaker; and (2) applicant was denied a fair hearing in the trial court due to an ex parte communication between the court and an assistant attorney general while his case was pending for final disposition. We find no merit in these contentions and affirm.

On September 2, 1981, a riot occurred at the Iowa State Penitentiary at Fort Madison, Iowa. In the course of the disturbance fires and property damage occurred, and staff members were held as hostages by inmates. The warden conducted negotiations between two separate groups of inmates, each holding hostages, in an attempt to end the disturbance and secure the release of the hostages. In the course of these negotiations the warden communicated orally and in writing a promise of no reprisals against certain inmates, including Wagner, for "the situation at the Iowa State Penitentiary on September 2, 1981." This promise of no reprisals was specifically amplified to mean no administrative or disciplinary proceedings or sanctions would be brought against the identified inmates. The institution returned to normal when all of the remaining hostages were released.

On September 9, 1981, Wagner was placed on report for alleged institutional rule violations which occurred during the September 2 disturbance. Wagner was the only individual on the list of the designated beneficiaries of the no reprisals agreement to be charged with institutional rule violations and to suffer disciplinary penalties. Wagner was charged with yelling and screaming at inmates; ordering and intimidating officers out of a cellhouse; and stealing a cellhouse key, a gas grenade, a walkie-talkie and $\frac{3}{4}$ of a pound of sugar.

On September 17 a hearing was conducted on the charged violations. The disciplinary committee that was chosen to hear and decide the charges against Wagner included individuals not employed at or associated with the penitentiary. The committee found Wagner guilty of rule violations and imposed punishment of 30 days solitary, 180 days administrative segregation and suspension of honor contract. He received the committee's decision on September 17 and appealed the decision to the warden on September 18. On the same date the warden affirmed the disciplinary committee's decision.

Wagner's sentence was scheduled to expire on September 18. On that date Wagner demanded several times to be released without success. Unknown to Wagner, after the disciplinary committee's decision on September 17, Warden David Scurr recommended to the director of corrections, Hal Farrier, that 1283 days of good time earned by Wagner be forfeited pursuant to subsection 246.41(5). Subsection 246.41(5) provides that the warden shall have the power, with the approval of the state director, to deprive a prisoner of any portion or all of his good time for a fifth or subsequent rule

1. This section provides in pertinent part:

 A prisoner who violates any of such rules [prison rules of discipline] shall forfeit the reduction of sentence earned by him, as follows:
 . . . .

 5. For the fifth and each subsequent violation, . . . the warden shall have the power, with the approval of the state director, to deprive the prisoner of any portion or all of the good time that the convict may have earned.

violation. The director gave the necessary permission. Wagner's good time was forfeited on the day before his scheduled release.

Wagner's application for postconviction relief challenges the loss of his good time. The matter was heard before Judge John C. Miller who filed a ruling denying and dismissing the application on March 25, 1983. Judge Miller also denied a motion requesting a new trial and an amendment or enlargement of findings. Wagner filed a subsequent motion for a new trial alleging misconduct by Judge Miller. After a hearing, this motion was denied by Judge Harlan W. Bainter.

I. *Due process.* Appellant asserts that his right to due process of law as secured by the fourteenth amendment to the United States Constitution was violated. We review de novo in light of the totality of the circumstances. *Kelly v. Nix,* 329 N.W.2d 287, 291 (Iowa 1983).

In *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), the Supreme Court established minimum requirements of procedural due process to be afforded prisoners in disciplinary proceedings. We recently applied the constitutional guarantee of "some form of due process" to a hearing for deprivation of a prisoner's "good time" because of misbehavior in *Niday v. State,* 353 N.W.2d 92 (Iowa 1984). The narrow range of protected liberty interests that are afforded a prisoner must be flexible and attuned to the setting by balancing and adjusting the prisoner's rights against the needs of the prison. *Id.* at 93–94. In this context we address Wagner's claims.

A. *Notice of involvement in hostage situation.* Wagner urges that the disciplinary notices filed against him contained no allegations relating to his alleged involvement in the hostage situation on September 2. He further claims that this topic was not touched upon in the disciplinary hearing on September 17; however, he urges that the warden and director concede that his good time was taken away because of his involvement in the hostage situation.

He concludes that he was not afforded the fundamental right of notice and opportunity to be heard.

Written notice of the disciplinary charges must be given to the accused in order to inform him of the charges and to allow him to prepare a defense. *Wolff,* 418 U.S. at 564, 94 S.Ct. at 2979, 41 L.Ed.2d at 956. The right to notice and hearing is confined to the disciplinary action; due process does not mandate an additional hearing, preceded by notice, before the forfeiture of the prisoner's good time. *Picard v. State,* 339 N.W.2d 368, 373 (Iowa 1983).

Wagner was afforded proper notice concerning his rule violations. Wagner misinterprets the statements of the warden and director in making his claim. Our review of the facts indicates that Wagner's good time was revoked because of the number of disciplinary rule violations, including previous rule violations. The latest violations arose from Wagner's theft of a cellhouse key, a walkie-talkie and a gas grenade. He additionally threatened and intimidated prison staff members to give up a key and evacuate the cellhouse. He was given notice of these charges. Wagner did become involved in the taking and holding of hostages, but was not charged specifically with this misconduct. Most of the charged misconduct could be characterized as a part of the hostage situation. We find the notice of misconduct properly informed Wagner of the violations which led to the revocation of his good time.

B. *Failure to follow its own rules.* Wagner urges that an Employee's Manual of the Department of Social Services provides that the disciplinary committee must make an appropriate recommendation to the warden when revocation of good time is contemplated. No such recommendation was made. Wagner argues that his due process rights were violated because the institution failed to follow its own rules. The State urges that the Employee's Manual was not admitted into evidence and may not be considered on appeal.

The trial court found that the prison officials were permanently enjoined from conducting prison disciplinary proceedings in contravention of the guidelines set forth in the rule 804 policy, *Kelly v. Nix*, 329 N.W.2d 287, 293 (Iowa 1983), and that the rules in the manual were different and in contravention of the injunction. The trial court further concluded that the language of the provision in the manual did not require a recommendation from the committee as a prerequisite to deprivation of good time. We agree with the trial court.

In its ruling the trial court set out the pertinent part of the Employee's Manual which Wagner relies upon as follows:

> Whenever the committee desires to take from the resident more than the number of days of good conduct time specified in Iowa Code section 246.41(5) as the result of a resident's fifth or subsequent infraction, the disciplinary committee shall note the maximum amount it believes shall be taken in the decision.

The warden testified he did not use the quoted provision; he used the Red Rulebook that set forth the rule 804 policy.

Wagner's complaint must fail for several reasons. He failed to establish that the Employee's Manual was binding on the warden or that it should be allowed to contravene the rule 804 policy established by federal court order. Additionally, our interpretation of the language in the Employee's Manual is that it places no limitation on the statutory authority of the warden to suspend good time with the approval of the director. The manual only provides for a committee recommendation to the warden regarding the time "it believes shall be taken."

■ C. *Revocation contemporaneous with the decision of the disciplinary committee.* We find no merit in Wagner's next claim that it was a violation of the rules to revoke Wagner's good time contemporaneous with the decision of the disciplinary committee. He maintains that, pursuant to established policy and procedure, sanctions were not to take effect until after he had either exercised or waived his right to appeal to the warden from the disciplinary decision. Wagner was not denied the right to appeal; he did in fact appeal from the disciplinary committee's decision. Although sanctions ordered by the disciplinary committee normally are not effective until after the expiration of the time for appeal, the warden is not prevented from exercising the authority that he is given under subsection 246.41(5) prior to the expiration of the time for appeal, especially in this case when exigent circumstances dictated that the warden act promptly. If the warden had waited a day, Wagner's term would have expired before the good time was revoked. Wagner's conduct on September 2, for which he has been disciplined, justified the revocation of his good time. We find the warden acted reasonably under the circumstances present.

■ D. *No reprisals.* Wagner and several other inmates were promised no reprisals for their activities on September 2. Wagner asserts that the no reprisals agreement was breached with respect to himself alone. The State urges that any such promise is void and unenforceable because it was made under duress and claims that Wagner did not live up to the agreement because he did not release his hostages immediately after the delivery of the no reprisals agreement. Wagner responds that the duress existing on September 2 was generated by other inmates. Although we agree with the State's version that Wagner breached the agreement, we prefer to turn this issue as a matter of law.

■ We conclude that any agreement for immunity or amnesty that is produced by unlawful threats, such as the hostage situation in this case, is contrary to public policy and void. *United States v. West*, 607 F.2d 300, 303–04 (9th Cir.1979); *United States v. Bridgeman*, 523 F.2d 1099, 1110 (D.C.Cir.1975), *cert. denied*, 425 U.S. 961, 96 S.Ct. 1744, 48 L.Ed.2d 206 (1976); *United States v. Gorham*, 523 F.2d 1088, 1097 (D.C.Cir.1975); *State v. Rollins*, 116 R.I. 528, 533, 359 A.2d 315, 318 (1976). We agree with the statement in *Rollins* that

"[p]romises exorted through violence and coercion are no promises at all; they are void from the beginning and unenforceable as a matter of public policy." 116 R.I. at 533, 359 A.2d at 318. The executive department may wish to live up to such agreements for reasons it finds valid; when it does not, we will not uphold the agreements.

E. *Impartial decision maker.* Wagner maintains that an impartial tribunal or decisionmaker is a fundamental requirement of due process in an adjudicatory proceeding. He asserts that the warden and director were not impartial and that his due process rights accordingly were violated.

■ An impartial tribunal is a fundamental right imposed by due process. *Fichtner v. Iowa State Penitentiary,* 285 N.W.2d 751, 758 (Iowa 1979). Whether the action of the warden and director violated due process must be examined in light of the balancing, through mutual accommodation of the prison's needs and Wagner's rights, that was described in *Niday.* 353 N.W.2d at 93–94.

The trial court carefully examined the facts surrounding the issue of impartiality and found against Wagner. We agree with the trial court.

■ The court pointed out that, although the warden was emotionally involved in the events of September 2, there were other considerations. A fair and impartial tribunal imported from another institution decided the facts. The two-week period between the incident and the appealed decision served as a "cooling-off period" in which the warden regained any objectivity he might have lost. We are mindful of the limited, but important, discretion exercised by the warden. The warden's decision did not involve establishment of guilt of the rule violations nor depend upon the credibility of witnesses, but hinged on the imposition of penalty. Although the statute places the responsibility for this decision upon the warden, it is subject to the approval of a person further removed from the scene, the director. The director followed the events of September 2 from the seat of government in Des Moines. The court also referred to the fact that a Deputy Director and a Commissioner of the Department of Social Services were consulted for advice. We gain insight into the problem of the prison from, but do not rely upon, the State's argument that the practical result of Wagner's argument is that an inmate who causes a disturbance large enough to attract the attention of the warden and the director could insulate himself from the loss of time provisions of subsection 246.41(5). Finally, in view of a determination by the trial court, unchallenged here, that Wagner had in excess of 50 disciplinary reports, we find the warden's decision, as approved by the director, to be rational and sensible. We find no exercise of partiality or denial of due process.

■ II. *Ex parte communication.* In this division Wagner complains about the trial court's activities. On March 25, 1983, Judge Miller entered an order overruling and dismissing Wagner's application for postconviction relief. On April 5, 1983, a motion for a trial and an amendment or enlargement of facts was filed by Wagner. The hearing was set on the resisted motion for May 3, 1983. On April 29, 1983, an assistant attorney general, other than the one representing the State in the postconviction proceeding, approached Judge Miller for his approval of a trial information charging Wagner with eight counts of kidnapping and one charge of insurrection arising from Mr. Wagner's alleged activity on September 2, 1981. Judge Miller reviewed the information and approved it for filing pursuant to Iowa Rule of Criminal Procedure 5(4). Judge Miller never informed Wagner or his counsel of his actions and communications with the other assistant attorney general on April 29, 1983.

When Wagner's counsel learned of these events, he renewed Wagner's motion for a new trial. This motion was heard by Judge Harlan W. Bainter. Wagner claims that these events deprived him of his right to a fair hearing in the trial court. He main-

tains that the ex parte conversation on April 29, 1983, while appropriate under rule 5(4), deprived him of the appearance of fairness. He asserts that the trial court in its approval of the information considered evidence and materials other than those arising from the evidence in the postconviction proceeding. We find no merit in appellant's argument.

Nothing in the record indicates that Judge Miller considered anything outside the record in the postconviction proceeding when ruling on Wagner's motion for a new trial and an enlargement of the findings of fact. The assistant court administrator schedules the cases, including the pending motion. Judge Miller indicated that he did not recall being aware at the time he signed the information that Mr. Wagner had a pending motion in his postconviction proceeding. Judge Miller testified that, if the pending motion had been called to his attention previously, it did not occur to him at the time he signed the trial informations. The assistant attorney general was not aware that a motion for new trial had been filed. Neither Judge Miller nor the assistant attorney general acted improperly concerning the approval of the information.

We find no impropriety or appearance of impropriety on the part of Judge Miller in ruling on the motion. A judge should "neither initiate nor consider *ex parte* or other communications concerning a pending ... proceeding." Iowa Code of Judicial Conduct Canon 3A(4). There is no evidence or hint of evidence that Judge Miller initiated or considered *ex parte* communications in ruling on this case.

Wagner's suggestion of impropriety shows a lack of knowledge concerning the responsibility and workload of our trial judges. They handle heavy trial loads and additionally sign and approve literally hundreds of routine orders, judgments and decrees during the period of a few weeks. In so doing they constantly are dealing with lawyers who have pending matters before the court. They also read newspapers. Unlike a jury, trial judges are presented inadmissible evidence at hearings that they must sort out and not consider in a factfinding; this is a required skill of the office. In our experience as an appellate court, we have found that they perform this skill well. The present situation is not dissimilar; a judge has received information outside the record which must be ignored.

In ruling on the renewed motion for a new trial, Judge Bainter points out that it is not unusual for dual criminal and civil proceedings to arise from events in the penitentiary and that, as a consequence, local judges often are confronted with these dual proceedings. It is not realistic to expect that we have a separate judge for each case with measures taken to insulate the judge from the other cases. Nor do we find such measures are necessary. Generally, we are satisfied that our system works, and due process is provided the litigants. Specifically, in the present case there is no indication of wrongdoing by Judge Miller. Judge Bainter correctly denied Wagner's motion.

AFFIRMED.