# IN THE COURT OF APPEALS OF IOWA

No. 19-0715
Filed July 24, 2019

**IN THE INTEREST OF I.P.,**
**Minor Child,**

**B.C. and B.C., Intervenors,**
    Appellants.

_____


Appeal from the Iowa District Court for Linn County, Barbara H. Liesveld, District Associate Judge.


Foster parent intervenors appeal the juvenile court order denying their motion to remove the Iowa Department of Human Services as guardian. **AFFIRMED**.


Angela M. Railsback of Railsback Law Office, Cedar Rapids, for appellants.

Thomas J. Miller, Attorney General, and Kathryn K. Lang, Assistant Attorney General, for appellee State.

Kimberly A. Opatz of Linn County Advocate, Inc., Cedar Rapids, attorney and guardian ad litem for minor child.


Considered by Vaitheswaran, P.J., and Potterfield and Tabor, JJ.

**TABOR, Judge.**

"In this case, there is not one, but two, homes that want to be [the child's] forever home." That is how the juvenile court described the tug-of-war over one-year-old I.P. in its order denying a motion by the foster parents to remove the Iowa Department of Human Services (DHS) as her guardian. The motion followed termination of I.P.'s biological mother and father's parental rights. The foster parents, Brad and Bobbi, intervened in I.P.'s case and challenged the DHS decision to move I.P. to the home of Richard and Patricia, the adoptive parents of I.P.'s half-sister. Brad and Bobbi allege the DHS acted unreasonably in not sending timely relative notices and the new case permanency plan is not in I.P.'s best interests.

After our independent review of the record,[1] we reach the same conclusion as the juvenile court: "the DHS has not failed in its guardianship duties or in looking out for [I.P.]'s best interests." Thus, we affirm.

## I. Facts and Prior Proceedings

I.P. never lived with her biological parents, Joshua and Haley. She tested positive for illicit drugs at her birth in October 2017. The DHS removed the newborn from parental care and placed her with foster parent Sandy. Sandy relied on Brad and Bobbi to provide respite care for I.P. So, according to the DHS, when the agency placed I.P. in the home of Brad and Bobbi in early April 2018, the

---

[1] We review de novo actions seeking to remove the DHS as guardian and challenging custody placement. *In re E.G.*, 738 N.W.2d 653, 654 (Iowa Ct. App. 2007). We consider both facts and law before adjudicating rights anew. *Id.* We give weight to the juvenile court's findings of fact but they do not bind our conclusion. *Id.*

transition was "seamless." The DHS considered Brad and Bobbi as prospective adoptive parents. And I.P. thrived in their care, according to reports from the guardian ad litem (GAL).

Shortly before the termination hearing for Joshua and Haley in May 2018, the DHS case worker realized she had not complied with the notice requirements of Iowa Code section 232.84 (2018).[2] Upon investigating, the DHS discovered Haley's older biological daughter, J.D., had been adopted by Richard and Patricia. J.D., who is I.P.'s half-sister, was then eight years old. Richard and Patricia did not have ongoing contact with Haley and did not know about I.P.'s birth. The case worker testified she told Brad and Bobbi at a pretrial conference that she was belatedly sending out the relative notices. The relative notices in the record were dated June 27, 2018.

Once they learned of I.P.'s situation, Richard and Patricia asked for visitation, which began in mid-July 2018. In that same time frame, the juvenile court issued its order terminating the parental rights of Joshua and Haley. After the termination, Brad and Bobbi moved to intervene. They asserted: "It was shocking to them to now be told out of the blue that another half-sibling is in Davenport, and that this family is interested in being a placement option for [I.P.]." The foster parents also asked the court to remove the DHS as I.P.'s guardian.

---

[2] That statute provides:
> Within thirty days after the entry of an order under this chapter transferring custody of a child to an agency for placement, the agency shall exercise due diligence in identifying and providing notice to the child's grandparents, aunts, uncles, adult siblings, *parents of the child's siblings*, and adult relatives suggested by the child's parents.

Iowa Code § 232.84 (emphasis added).

The juvenile court granted the motion to intervene in August 2018. Meanwhile, the DHS completed a home study for Richard and Patricia; the study recommended I.P. transition to their home "with the intention of this becoming a pre-adoptive placement." The juvenile court allowed I.P. to remain with Brad and Bobbi until it heard evidence on their motion to remove the DHS as guardian. The court heard that motion across three days in late November 2018 and late January 2019.

In April 2019, the court denied the motion to remove the DHS as guardian. Before reaching its conclusion, the court found the DHS acted unreasonably in failing to timely contact I.P.'s relatives: "Had DHS done its due diligence at or near the beginning of this case, as required by law, [Richard and Patricia] would have received notice well before [I.P.] was ever placed with [Brad and Bobbi]." The court determined the DHS's failure "led to increased trauma to [I.P.] and a delay of permanency," as well as "avoidable heartache" for both sets of parents. But the juvenile court nonetheless decided removing the DHS as guardian was not an appropriate remedy for the violation of section 232.84(2).

Foster parents Brad and Bobbi appeal the district court's decision.

## II. Analysis

Iowa Code section 232.117(3) governs guardianship and custody arrangements after termination of parental rights. The provision directs the juvenile court to transfer a child's guardianship and custody to one of the following: (1) the DHS; (2) a placement agency or other suitable entity licensed to provide care; or (3) a parent who does not have physical care, other relative, or other suitable person. Iowa Code § 232.117(3). This post-termination statute gives "no

preference to any person or entity." *In re N.V.*, 877 N.W.2d 146, 150 (Iowa Ct. App. 2016). The court may remove the guardian upon a petition by an interested party or on its own motion. Iowa Code § 232.118(1).

Neither section 232.117 nor section 232.118 offer criteria for removing a guardian. *See* Iowa Code §§ 232.117, .118; *see also In re D.H.*, No. 10-1313, 2010 WL 4484849, at *4 (Iowa Ct. App. Nov. 10, 2010). "In the absence of statutory criteria, we have examined the reasonableness of the current guardian's actions and the best interests of the child." *N.V.*, 877 N.W.2d at 150. In determining whether the DHS acted unreasonably, we consider "whether 'the [DHS] in any way failed in its guardianship duties or in looking out for [the child's] best interests.'" *In re T.J.M.*, No. 18-1390, 2018 WL 5840806, at *3 (Iowa Ct. App. Nov. 7, 2018) (quoting *In re E.G.*, 745 N.W.2d 741, 744 (Iowa 2007)). Even if the DHS acted unreasonably in discharging its guardianship duties, we will not reflexively remove the DHS as guardian under section 232.118 if the removal is not in the child's best interests. *See In re A.V.*, No. 16-1749, 2017 WL 104974, at *2 (Iowa Ct. App. Jan. 11, 2017).

Foster parents Brad and Bobbi argue the juvenile court should have granted their motion to remove the DHS as I.P.'s guardian. They divide their argument into five claims:

- the DHS was unreasonable in "not sending timely relative notices and by concealing a relative placement from the court and parties";
- the DHS did not act in I.P.'s best interests;
- the DHS lacked credibility throughout the proceedings;
- the juvenile court mistakenly found (a) I.P. had a bond with Richard and Patricia and (b) the couple was a suitable placement; and

- the juvenile court erred in allowing Richard and Patricia to make "ex parte" filings with the clerk of court.

We will address each claim in turn, with two exceptions. We will not separately analyze their allegation the DHS was untruthful. In general, we defer to the juvenile court's credibility findings. *See In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). And we will address the bonding issue and the suitability of Richard and Patricia as a placement option in our evaluation of what is in I.P.'s best interests.

First, on untimely relative notice, the juvenile court found the DHS failure to comply with section 232.48 was "unreasonable" and contributed to a regrettable delay in permanency for I.P. But the court decided removing the agency as I.P.'s guardian was not a fitting remedy. We agree. If post-termination placement decisions are in the child's best interests, a case worker's failure to provide timely statutory notice to relatives is not a basis to remove the DHS as guardian. *See A.V.*, 2017 WL 104974, at *2; *In re X.O.*, No. 16-0313, 2016 WL 2743445, at *5 (Iowa Ct. App. May 11, 2016).

Second, on I.P.'s best interests, the foster parents stress the importance of "continuity of care" and downplay the value of placing her in the home with her sister, with whom I.P. had no prior relationship. The foster parents assert:

> The purpose of keeping siblings together is to preserve the child's *existing bonds and to avoid attachment disruptions*. In contrast, by insisting siblings be uprooted to be together, regardless of whether they knew each other and no matter the emotional or physical cost, DHS delayed permanency, defied best interests and caused unnecessary harm to I.P.

The record does not support the foster parents' broad assertions. The juvenile court heard testimony from Tracey Parker, manager of the DHS foster and adoptive program and a social worker with thirty years of experience. Parker

explained when more than one family would like to adopt a child, the DHS holds a selection staffing, and the adoption worker gathers information to determine the family best able to "meet the needs of the child."  Under its protocols, the DHS prefers "keeping the birth family together, whenever possible."  The DHS also gives consideration to relatives and foster parents who have cared for a child for more than six months.  Parker testified: "The department does consider the children's emotional and developmental well-being in the placement where they may be currently and in the future where they may be if they are moved."  She referenced "research that shows children can be successfully transferred, especially to a relative, and still show few or no long-term effects when it's done properly, slowly, and with the support of all of the adults in the child's life."

On sibling connections, Parker testified:

The [DHS] views relative connections, and especially sibling connections, as critical for children's ongoing long-term development.  The studies have shown that children who maintain connections to their family's origin fare better overall in well-being as they get older and even into adulthood than children who experience that severing of relationships with family and siblings.

Parker noted the legislature recently amended the definition of relative in the juvenile justice chapter to include the parent of a sibling.  *See* 2013 Iowa Acts ch. 50, § 1 (codified at Iowa Code § 232.2(46A)).

Given this testimony, the juvenile court found the DHS had substantially followed its protocols, conducted adoption interviews, and determined it was in I.P.'s long-term best interests to be placed in the home of Richard and Patricia with her biological half-sister.  The juvenile court then decided the DHS had not failed in its guardianship duties or thwarted I.P.'s best interests.

We reach the same conclusion on the best-interests question. The evidence shows the DHS was responsibly discharging its duties as guardian. It found an adoptive home for I.P. with her biological half-sister. Richard and Patricia were licensed foster care parents for four years when they adopted J.D. and another daughter. They created a vibrant environment for their now school-aged daughters, immersing them in activities such as girl scouts, soccer leagues, and church. Nothing in the record suggests they are not suitable caregivers.

The juvenile court also found Richard and Patricia were sincere in their desire to welcome I.P. into their home and nurture the sibling bond between her and J.D. Both statute and case law emphasize the importance of sibling relationships. *See, e.g.*, Iowa Code § 232.108 (requiring the DHS to make "reasonable effort to place the child and siblings together"); *In re L.B.T.*, 318 N.W.2d 200, 202 (Iowa 1982) (favoring placement because of "the presence there of his natural brother and sister"); *see also* Jill Elaine Hasday, *Siblings in Law*, 65 Vand. L. Rev. 897, 905 (2012) ("Even adopted children who do not know if they have biological siblings express a strong desire to discover whether they have such siblings, to meet their siblings, and to have an ongoing relationship with them.").

After finally making the required relative notifications, the DHS took measured steps to introduce I.P. to Richard, Patricia, and their two daughters. The family first met I.P. in July 2018. The juvenile court approved three-hour weekend visitations beginning in August 2018. The length of the visits increased as I.P. grew more comfortable with Patricia and Richard. In December 2018, the GAL recommended allowing the DHS discretion to authorize visits in Richard and

Patricia's home.[3] I.P. had her first overnight visit with Richard and Patricia in January 2019. The foster parents reported after her visits with Richard and Patricia, I.P. struggled with sleeping, hand-banging, and tantrums. But adoption specialist Kelly Morgan said she would expect some negative reactions from I.P. when introduced to new people and, because she was non-verbal, her behaviors revealed she was "confused" about what was going on. Morgan testified she believed I.P. had the potential to "re-bond and settle into a different home." Even the foster parents' expert witness, Darcy Andres, acknowledged "if a child has established an attachment once, [she's] likely to be able to establish an attachment again."

On bonding, the foster parents dispute that I.P. has developed any attachment with Richard and Patricia. But Richard testified as soon as I.P. sees her sister, "she's all smiles and happy and hugs her." Patricia likewise testified I.P. "comes to us right away when we are visiting" but believed the child's comfort level would increase when interactions took place in their home with less distractions. After reviewing the record, we agree with the juvenile court's conclusion I.P. was developing an appropriate bond with the potential adoptive family.

Finally, the foster parents accuse the juvenile court of violating Rule 51:29 of the Iowa Code of Judicial Conduct by allowing Richard and Patricia "to make two highly prejudicial paper filings." The foster parents allege they "only became aware of the filings through their preparation of this appeal." They contend the court's "acceptance of these filings, without any notification to the parties or

---

[3] According to Dr. Regina Butteris, because I.P. had developmental delays, the structure of visits in the home would be preferable to visits in the community.

opportunity to respond, severely prejudiced and negatively impacted" their rights in this proceeding.

Rule 51:2.9(A) prohibits a judge from initiating, permitting or considering ex parte communications or "other communications made to the judge outside the presence of the parties or their lawyers, concerning a pending matter or impending matter."  An ex parte communication is, by definition, "A communication between counsel or a party and the court when opposing counsel or party is not present." *Ex Parte Communication*, *Black's Law Dictionary* (11th ed. 2019).  But the comments to the rule extend the prohibition against ex parte communications to "other persons who are not participants in the proceeding."  Iowa Code of Judicial Conduct R. 51:2.9 cmt. 3.

Richard and Patricia—who were not technically parties to the proceeding—without counsel, mailed two letters to the juvenile court, apparently without serving them on counsel for either the foster parents or the State.  The clerk of district court file stamped the first letter on October 29, 2018, and the second on April 3, 2019.  Attached to the October filing were letters in support of placing I.P. with Richard and Patricia.  Both filings included photographs of I.P. with their family members.  The foster parents do not establish the juvenile court was aware of the filings or considered them in ruling on the motion to remove the DHS as guardian.  *See Wagner v. State*, 364 N.W.2d 246, 252 (Iowa 1985) ("There is no evidence or hint of evidence that Judge Miller initiated or considered ex parte communications in ruling on this case.").  The foster parents' argument about ex parte communications is not cause for reversal.

In closing, we recognize the excellent work Brad and Bobbi have done in caring from I.P., and we understand their desire to adopt her. But providing a good foster home does not create a legal ground to remove the DHS as guardian after termination. "[I]f every foster parent who formed a bond with a child were given enforceable rights to the child, it would upset the goals of the system." *E.G.*, 745 N.W.2d at 744. The overarching goal is to safeguard I.P.'s best interests, which the DHS did here.

**AFFIRMED.**