HORACE DODGE *vs.* OSMOND C. GOODELL, Deputy Sheriff.

The statements of a vendor retaining possession after a sale as to his possession of, or relation to, the property, are original evidence against the vendee to show fraud in the sale.

The statements of a person who held property which has been attached as his, as to the ownership of the property, are evidence for the attaching creditor against a third person claiming the property from the sheriff.

When a conspiracy has been shown by *primâ facie* proof, every act or declaration of every conspirator in forwarding the concerted plan, or in reference to the object conspired for, is original evidence against each conspirator, such acts and declarations being in law the acts and declarations of all.

The order in which a presiding judge allows competent evidence to be produced is discretionary, and not a matter for exceptions. If injustice results, the remedy is a petition for a new trial.

EXCEPTIONS to the Court of Common Pleas.

*January* 7, 1888. DURFEE, C. J. This case comes up from the Court of Common Pleas on exceptions. It is replevin for two mares, a wagon, a buggy, and divers other chattels, which, when replevied, were in the possession of the defendant, a deputy sheriff, who had attached them shortly before as the property of one Charles E. Read, at the suit of one Stephen S. Shepard. They were replevied August 27, 1886. It appeared at the trial that Shepard had been a copartner in business with Read, and had taken from him, on retiring, his note for $950 for money due from him to Shepard; that the suit in which the attachment was made was brought to recover this debt; that previously, to wit, in March, 1886, said Shepard had caused the property of Read to be attached in a suit for the same purpose, and that this prior attachment had been dissolved by an assignment, made by Read in pursuance of the statute, for the benefit of his creditors. This assignment was made to one Sidney H. Robinson, March 16, 1886. The plaintiff claimed under this assignment the property replevied, claiming it by virtue of a bill of sale from one P. H. Corr, who, he claimed, had bought it of the assignee. He testified that he bought the property April 12, 1886, when the bill of sale was given, and that he paid $600 for it in his own promissory notes, subsequently taken up by him and paid.

The defence was that the assignment was part of a scheme contrived by Read for the purpose of defrauding Shepard by withdrawing from his first attachment the property replevied, and

preventing any later attachment by pretended sales; and that the plaintiff, together with Corr and the assignee, coöperated with Read in carrying out this purpose, the alleged sales to Corr and by Corr to the plaintiff being merely paper or fictitious transfers, under which the property was still left with Read to be used by him and enjoyed as his own; and that as to Shepard, if not as to everybody else, it still remained in law as in fact his own. To establish this defence testimony was introduced to show that when the assignment was made Read was not insolvent; that the property replevied remained in his possession and use after the assignment as before, and was in his possession when attached; that while Read so had it in his possession he declared to different persons at different times that it was his own; that he told Shepard, " I own it, every dollar of it, and nobody owns it but me; and I would like to see you get a dollar of it; " that during the summer following the assignment Read had the wagon in suit in use in his business with his own name painted on it; that the plaintiff visited Read's place of business twice during the same period, but not for purposes connected with the ownership of the property; that after Shepard's first attachment, and before the assignment, Read, having one horse and wagon which, being out, was not attached, assigned them over to his book-keeper, Sidney H. Robinson, the same to whom he afterwards made his general assignment, and after that, thinking that Robinson, who was a minor, could not hold them, sent them to Corr, in Taunton; that he also had a legacy of $500 due him, and fearing that it might be attached, or pass under his assignment, made it over to his uncle; that Corr and Read were intimate friends; that Corr put in a claim for $2,500 under the assignment, but accepted a dividend on $279; and that the plaintiff was also on terms of intimacy with Read. Corr was not called as a witness; Robinson was a witness, but did not testify in regard to the sale to Corr. The jury found a verdict for the defendant. While the testimony was going in, the plaintiff took numerous exceptions to the admission of portions of it. Some of these exceptions were to the allowance of questions which did not elicit any testimony at all, or any testimony which would injure the plaintiff. Of course these exceptions are immaterial and furnish no ground for a new trial.

The other exceptions may be reduced to two classes. The first class relates to the statements made by Read in regard to the ownership of the property in suit while it was in his possession after the assignment, and after the alleged sale to the plaintiff. The cases cited by the defendant show that, where a vendor remains in possession after sale, his statements, explanatory of his possession or of his relation to the property, are original evidence against the vendee for the purpose of showing fraud in the sale; and also that the declarations of a person, having property in his hands which is attached as his, respecting the ownership thereof, are evidence for the attaching creditor against a third party claiming it of the sheriff, such statements and declarations being regarded as characterizing the possession and thus constituting a vital part of it. *Selsby* v. *Redlon*, 19 Wisc. 25; *Grant* v. *Lewis*, 14 Wisc. 487; *Ross* v. *Hayne*, 3 Iowa, 211; *Avery* v. *Clemons*, 18 Conn. 306.

Under the authority of these cases the first class of exceptions must be overruled.

The second class of exceptions relates to the testimony given in regard to attempts made by Read, before the assignment, to put parts of his property out of the reach of his creditors, and to his declarations of hostile feelings and intentions toward Shepard. There can be no doubt that in a case between Shepard and Read the testimony, though to some extent collateral, would be admissible to show the intent with which Read acted toward Shepard in the matter in controversy, and that it was fraudulent, his acts before and after the assignment appearing to have the same general purpose. The question is whether it was admissible in the same way against the plaintiff in the case at bar. We think it was. The defence was that the plaintiff had acted in concert with Read and Corr to defraud Shepard, or, in other words, had entered into a conspiracy with them for that purpose. In such a case, upon *primâ facie* proof of the fact of conspiracy, or upon the production of evidence tending to establish it, the rule as to hearsay and *res inter aliós* is greatly relaxed, every act and declaration of every conspirator in pursuance of the concerted plan, or with reference to the common object, being regarded in law as the act and declaration of all, and therefore as original evidence

against each of them. "It makes no difference," says Mr. Green-leaf, "at what time any one entered into the conspiracy. Every one who does enter into a common purpose or design is generally deemed, in law, a party to every act which had before been done by others, and a party to every act which may afterwards be done by any of the others in furtherance of the common design." 1 Greenleaf on Evidence, § 111; *Lincoln* v. *Claflin*, 7 Wall. 132; *Sarle* v. *Arnold*, 7 R. I. 582. The question then is whether, in-dependently of the acts and declarations of Read here in debate, there was other testimony tending to establish a conspiracy, which was sufficient to warrant the admission of the testimony relating to said acts and admissions. We think the record taken as a whole clearly shows a sufficiency of such testimony, though prob-ably, if the attention of the presiding judge had been drawn to the rule applicable to cases of conspiracy, he would have required the observance of a somewhat different order in the introduction of it.

Some of the testimony excepted to was introduced in the course of the rebuttal, or in surrebuttal, and is excepted to on the ground that, if admissible at all, it should have been introduced as testi-mony in chief. It is discretionary with the presiding judge to admit competent testimony at any stage of a trial, and an excep-tion will not lie because he admits it out of the regular order. *Hampson* v. *Taylor*, 15 R. I. 83, 87. If any miscarriage of justice results, the remedy is by petition for new trial.

*Exceptions overruled.*

*Charles H. Page & Franklin P. Owen*, for plaintiff.
*Lemuel H. Foster*, for defendant.