STATE

v.

Walter R. SIMPSON.

No. 86–90–C.A.

Supreme Court of Rhode Island.

Feb. 16, 1987.

Arlene Violet, Atty. Gen., Michael R. Hagopian, Thomas Dickinson, Sp. Asst. Attys. Gen., for plaintiff.

Patricia A. Hurst, D'Amico, Connor & Hurst, Providence, for defendant.

**1.** Not her real name.

OPINION

SHEA, Justice.

This matter is before the court on appeal from a conviction of first-degree sexual assault. On the defendant's appeal his first conviction was overturned, and this appeal is the result of the retrial and conviction. After being found guilty on retrial, the defendant was sentenced to fifty years, twenty of which were suspended with twenty years probation. We affirm.

At trial the victim, hereinafter referred to as Melissa,[1] testified that on March 23, 1982, she left her home at approximately 9:30 p.m. and went to the Firefighter's Lounge on Cranston Street in Providence. There she met her cousin and some friends and had two drinks. Melissa stayed at the bar for approximately forty-five minutes, then left to deliver a homemade pizza to her aunt's home on Linwood Avenue. Outside the bar, Melissa had an argument with a male friend, hereinafter referred to as John.[2] She also met defendant outside the bar, and he asked her for a ride home. Melissa and defendant got into Melissa's car and headed for her aunt's house to deliver the pizza.

As Melissa turned the corner onto Linwood Avenue, she saw John standing by his car. She stopped for a short time, and they again exchanged words. At this point, defendant also got out of Melissa's car. Melissa returned to her car and drove the short distance to her aunt's house alone. After delivering the pizza, Melissa returned to her car where she found defendant, who repeated his request for a ride home.

The defendant directed Melissa into Roger Williams Park. Melissa assumed he lived in the area and was taking a short cut, but she soon realized she was being directed to drive in circles. The defendant began making advances toward Melissa and told her to pull over. When she refused, defendant grabbed the wheel,

**2.** Not his real name.

steered the car to the side of the road, and pulled the keys out of the ignition. Melissa struggled out of the car, but defendant threw her to the ground and dragged her by the legs about fifteen feet down an embankment. Melissa suffered cuts and bruises to her hands, arms, legs, and face as a result of being dragged through brush, thorns, and broken glass. The defendant then sat on Melissa's legs, pulled her clothing off, and sexually assaulted her.

The defendant began to walk away when Melissa reminded him that she no longer had the keys to her car. The defendant told her to walk with him, and she complied, testifying later that she was "scared for her life." After some time, defendant entered a house to find Melissa a ride home, instructing her to wait for him. Melissa seized this opportunity to run down an alley next to the house, whereupon she found herself on Broad Street. She flagged down a Rhode Island Public Transit Authority bus and told the driver she had been raped. The driver flagged down a Providence police car, and the officer radioed for a rescue vehicle. Both the driver of the bus and the responding officer testified that Melissa was hysterical, that her clothing was torn, and that she was bleeding.

The defendant was arrested approximately two weeks later. At that time, when the police arrived at the Broad Street address, defendant exited through a window of his apartment and tried to jump over a fence. He was apprehended close to the place where Melissa had stopped the bus.

The defendant took the stand and testified that he had asked Melissa for a ride home when she first arrived at the Firefighter's Lounge. He also testified that this was not the first time Melissa had driven him home. While inside the bar, defendant stated, he intervened when John slapped Melissa during an argument. The argument continued outside the bar and defendant again came to Melissa's aid.

Melissa and defendant left in Melissa's car but met John again on Linwood Avenue where another fight ensued. During this altercation, John was able to slap her, push her into some bushes, drag her by her hair, and knock her into a fence before defendant was able to break up the fight. The defendant noticed that Melissa was scratched and bleeding at this point. The defendant then walked away from the scene of the fight, and John followed. The two men walked together a short distance until John turned at Potters Avenue. As they walked, defendant noticed that Melissa was racing her car up and down the street. When John left defendant, defendant went to a hot weiner place on Bucklin Street, arriving sometime after midnight. He last saw Melissa driving in the direction John had taken.

During cross-examination of defendant, the prosecutor asked if defendant was aware that Melissa's car was found at Roger Williams Park at approximately 1:20 a.m. on March 24, 1982. Defense counsel objected and moved to pass, and the trial justice sustained the objection and denied the motion. In a cautionary instruction to the jury the trial justice explained that statements of counsel are not evidence. The prosecutor later introduced the information relating to the time of the recovery of Melissa's car through a rebuttal witness. Defense counsel objected to the use of rebuttal evidence.

The first conviction of defendant for this offense was overturned on appeal and remanded for a new trial. At the first trial, defendant was sentenced to fifteen years, five of which were suspended with five years' probation. At retrial, defendant was sentenced to fifty years, twenty of which were suspended with twenty years' probation. At the sentencing hearing, the trial justice considered defendant's habits and conduct since the first trial, as well as his mental and moral propensities. The trial justice stated that defendant had been found guilty of a brutal crime, one not to be taken lightly. Also, while defendant

was incarcerated at the Adult Correctional Institutions following his first trial, he was charged with seventy-five violations. He was found guilty of sixty-eight, one of which involved an assault on a guard. As a result of the assault, the guard lost sight in one of his eyes. In addition, at the time of the second sentencing, the trial justice also noted that defendant was the subject of a criminal information involving tampering with an automobile. This incident also occurred after his first trial. The defendant's fingerprints were found on the car, and he had been positively identified. Lastly, the trial justice believed defendant had lied under oath.

█ The defendant appeals the denial of his motion to pass following the improper question by the prosecutor on cross-examination. Motions to pass are addressed to the sound discretion of the trial judge. *State v. Pailin*, 114 R.I. 725, 729, 339 A.2d 253, 255 (1975). As a direct observer, the trial judge is in the best position to determine the effect of the improper statement on the jury. His or her determination will not be overturned unless it is clearly wrong. *Id.* The improper statement must be neither " 'totally extraneous to the issues in the case [nor] tend[ing] to inflame and arouse the passions of the jury.' " *State v. Caprio*, 477 A.2d 67, 73 (R.I.1984). The statement in question in this case was neither. The trial justice correctly sustained defense counsel's objection to the improper statement and gave an appropriate cautionary instruction. The prosecutor later put the evidence relating to the content of the statement properly before the jury through the rebuttal witness, who discovered Melissa's car.

Generally, a cautionary instruction directing the jury to disregard inadmissible evidence is deemed to cure any error. *State v. Pailin*, 114 R.I. at 729, 339 A.2d at 256. The trial justice properly instructed the jury that statements of counsel are not evidence. In this situation the cautionary instruction, along with the fact, that the evidence was later properly put before the

jury through rebuttal, sufficiently neutralized any prejudice inherent in the prosecutor's question.

█ The defendant also appeals the allowance of rebuttal testimony describing the time when and the location where Melissa's car was found. It is well settled that it is discretionary with the trial justice to admit competent testimony at any stage of a trial and in any order. *Hodosh v. Ford Motor Co.*, 477 A.2d 77, 80 (R.I.1984); *Dodge v. Goodell*, 16 R.I. 48, 51, 12 A. 236, 238 (1888). Accordingly, the decision to allow rebuttal testimony lies with the trial justice. Although the state, as the party bearing the burden of proof, must not hold back evidence and must present all its evidence during the case-in-chief, it need not anticipate the defendant's case. *Labree v. Major*, 111 R.I. 657, 675, 306 A.2d 808, 819 (1973). Once defendant took the stand and testified about his whereabouts at certain times during the course of the evening, the time of discovery of Melissa's car was used to discredit defendant's testimony. Absent an abuse of discretion, the decision of the trial justice will not be overturned.

This case is unique in that it had been fully tried once before. The defendant testified in the first trial, and the same rebuttal witness was presented by the state. Both parties were fully aware of the cases against them; therefore the possibility of unfairness to defendant resulting from his reliance on the state's case as presented is minimized.

█ *State v. Byrnes*, 433 A.2d 658 (R.I. 1981), relied upon by defendant, is distinguishable from this case. In *Byrnes*, surrebuttal testimony was not allowed because its apparent goal was merely to reiterate the testimony of a defense witness. *Id.* at 669. The offered evidence was cumulative, and as such, the decision to admit it lay within the sole discretion of the trial justice. *Id.* (citing *Morrarty v. Reali*, 100 R.I. 689, 219 A.2d 404 (1966)). Once the testimony of a witness has been denied on rebuttal, that witness may not be recalled to reiterate his position. *Id.* at 669 (citing

*Campbell v. Campbell,* 30 R.I. 63, 73 A. 354 (1909)). This is not the situation before us today. Here the state offered rebuttal testimony to challenge the credibility of defendant, not to reiterate testimony presented during its case-in-chief. The rebuttal testimony properly tended to refute defendant's testimony rather than merely to bolster the state's case. *See State v. Lisella,* 187 Conn. 335, 337, 445 A.2d 922, 923 (1982) (proper rebuttal avoids possibility of jury confusion or unfairness to defendant who has relied upon case as presented). In our opinion, defendant has not met the burden of establishing an abuse of discretion on the part of the trial justice in allowing the rebuttal testimony.

■ Lastly, defendant appeals the increased sentence imposed at his retrial. The United States Supreme Court has clearly stated "that a corollary of the power to retry a defendant is the power, upon the defendant's reconviction, to impose whatever sentence may be legally authorized, whether or not it is greater than the sentence imposed after the first conviction." *North Carolina v. Pearce,* 395 U.S. 711, 720, 89 S.Ct. 2072, 2078, 23 L.Ed.2d 656, 666 (1969). Reversal of the original conviction nullifies the previous sentence, thereby leaving the slate clear for imposition of a new sentence. *Id.* at 721, 89 S.Ct. at 2078, 23 L.Ed.2d at 667.

■ The trial justice on retrial may impose an increased sentence based on "events subsequent to the first trial that may have thrown new light upon the defendant's 'life, health, habits, conduct, and mental and moral propensities.'" *Id.* at 723, 89 S.Ct. at 2079, 23 L.Ed.2d at 668. The defendant's willingness to lie under oath is one factor to be taken into account during sentencing. *State v. Bertoldi,* 495 A.2d 247, 253–54 (R.I.1985). In line with this reasoning, the trial justice provided a careful explanation of his decision to impose an increased sentence. The objective information provided to the trial justice re-garding events subsequent to defendant's first trial more than justified the increased sentence.

In *North Carolina v. Pearce,* the Court held that the trial justice must remove the presumption of vindictiveness against a defendant for having successfully attacked his first conviction by placing his reasons for doing so on the record. The Court later modified this requirement, holding that the presumption of *Pearce* does not apply in situations in which the possibility of vindictiveness is speculative. *Texas v. McCullough,* —— U.S. ——, ——, 106 S.Ct. 976, 979–80, 89 L.Ed.2d 104, 111 (1986). The possibility of vindictiveness on the part of the trial justice in this case is speculative at best. For example, " 'unlike the judge who has been reversed,' the trial judge here had 'no motivation to engage in self-vindication.' " *Id.* at ——, 106 S.Ct. at 979, 89 L.Ed.2d at 111. Nevertheless, the trial justice in this case specifically addressed the need for a lack of vindictiveness when imposing an increased sentence. The record shows that he discussed his ability to "fairly and impartially approach the problem" and his ability to disregard any potentially prejudicial hearsay information that may have arisen during the sentencing hearing. We are convinced that the defendant's sentence was not increased in order to punish him for appealing his previous conviction and that the trial justice made it clear to the defendant that he had no such motivation.

For the above-stated reasons, the defendant's appeal is denied and dismissed, the judgment appealed from is affirmed, and the case is remanded to the Superior Court.