STATE

v.

David M. TIERNAN, Jr.

No. 92–461–C.A.

Supreme Court of Rhode Island.

July 12, 1994.

Jane M. McSoley, Asst. Atty. Gen., Providence, for plaintiff.

Richard M. Casparian, Public Defender, Paula Rosin, Chief Appellate Atty., Barbara Hurst, Deputy Public Defender, Providence, for defendant.

## OPINION

WEISBERGER, Acting Chief Justice.

This case comes before us on appeal by the defendant, David M. Tiernan, Jr. (defendant), from the trial justice's denial of his motion pursuant to Rule 35 of the Superior Court Rules of Criminal Procedure to reduce his sentence. We deny his appeal and affirm the order entered by the trial justice.

The precise issue we confront in this appeal is the question of whether the trial justice improperly considered either defendant's exercise of his privilege against self-incrimination under the Fifth Amendment to the United States Constitution or his exercise of his right to a public trial guaranteed by the Sixth Amendment to the United States Constitution and article 1, section 10, of the Rhode Island Constitution. We answer this question in the negative. The facts related to defendant's appeal are as follows.

In November 1990 defendant was convicted of two counts of second-degree child molestation after a trial by jury in Superior Court. At the sentencing hearing defendant argued that in light of his background, the absence of any prior record, and the nature of the crime involved, he should be given a sentence involving only treatment and counseling rather than imprisonment. The prosecutor disagreed, arguing that such treatment would not be effective unless defendant acknowledged his wrongdoing, which defendant refused to do. As a matter of deterrence and punishment, the prosecutor urged the court to impose a lengthy jail sentence.

The trial justice agreed with the prosecutor, citing five factors that were considered in formulating his decision—"the nature of the offense and the offender, punishment, rehabilitation and deterrence." The trial justice explained that "some program of counseling could be effective if culpability is accepted, [but][t]he problem is [defendant's] continued protestations of innocence." The trial justice explained this comment, stating that "it is my understanding from everybody knowledgeable in this area that treatment is not effective unless and until the person being treated, the defendant, acknowledges guilt, and the defendant still protests his innocence, and has done so here in court." Therefore, the trial justice reasoned that since rehabilitation was improbable,

> "[t]he Court is more concerned then with an appropriate punishment to satisfy what the Court will describe as defendant's debt to society and debt to this victim for his violation of law which will effectively operate to deter him in the future. * * * Consequently, punishment and deterrence are most important to the Court in this case when determining an appropriate sentence."

In light of the aforementioned factors, the trial justice sentenced defendant to two terms of twenty years, eight years to serve and twelve years suspended on each count, to be served concurrently.

The defendant appealed his sentence directly to this court. In an order dated April 16, 1992, we held that defendant's failure to bring a Rule 35 motion made his sentence unreviewable on direct appeal and accordingly we denied his appeal without prejudice. *State v. Tiernan*, 605 A.2d 1328 (R.I.1992).

Thereafter defendant filed a timely Rule 35 motion to reduce sentence. At the hearing on the motion, defendant presented the court with an admission of guilt and a profession of remorse—the key ingredients that the trial justice had found lacking at the time of the original sentencing with respect to defendant's potential for rehabilitation. The defendant attempted to justify his delayed acknowledgment of his crime by explaining that at the time of the sentencing hearing he had not yet come to terms with the sexual molestation that, he revealed to the court, he himself had endured in his own childhood. After hearing from defendant, the trial justice was presented with testimony from the victim's mother who painfully recounted the

traumatic effect that the molestation and the trial had had upon her daughter.

After considering the testimony presented, the trial justice denied defendant's motion to reduce sentence and made the following observations:

"I was satisfied that [the victim] was telling the truth. * * * I also observed that little girl testify. [The defendant] sat there and required her to testify. She did, and although she was a little girl, she was believed by the jury and by me; and yet he stood up and indicated to me that he intended to pursue all of his rights of appeal, again, which I believe he had his right to do, everybody does. He did that knowing full well that what that little girl said from the stand was absolutely true and he let her go through it.

  *    *    *    *    *    *

"While I am somewhat moved by [defense counsel's] argument and even the defendant's own statements, I am not persuaded by them, not in the least. [Defense counsel] made a comment as to my comment during sentencing, that is, that rehabilitation, if it's to be successful, requires first an admission of guilt, especially in these kinds of cases. I made that comment in that context. While I may have taken [it] into consideration had he admitted his guilt, that is not to say that a jail term would still not be imposed. Rehabilitation doesn't necessarily mean that you walk free and that you don't get any time to serve, not in my view, in any event."

On appeal defendant challenges his sentence on the grounds that at both the sentencing hearing and the Rule 35 hearing the trial justice violated defendant's constitutional rights by considering improper factors. First, defendant claims that at the sentencing hearing the trial justice's decision was tainted by his consideration of the fact that defendant invoked his Fifth Amendment privilege against self-incrimination and he used that fact to justify the imposition of a lengthy sentence upon defendant. Then at the Rule 35 hearing, when defendant waived his Fifth Amendment right and admitted his guilt, defendant claims that the trial justice justified defendant's lengthy sentence with an alternative, but equally objectionable, fact—that defendant had exercised his right to stand trial and thereby forced his child victim to endure a painful court experience. The defendant cites to us in support of his assertions a plethora of cases from other jurisdictions.

The state takes the position that the trial justice's considerations at both the sentencing and the Rule 35 hearing were based upon permissible factors, as articulated by this court, and that under our deferential standard of review, the length of the sentence imposed was appropriate in light of the crime committed. The state asserts that defendant has taken the challenged portions of the trial justice's decision out of context and that when properly viewed, the comments evidence no penalization of defendant for exercising any right.

I

■■■ A motion to reduce sentence under Rule 35 is basically a plea by a defendant for leniency and, as such, is addressed to the sound discretion of the trial justice. *State v. Byrnes*, 456 A.2d 742, 744–45 (R.I.1983). Because of our strong policy against interfering with a trial justice's exercise of discretion with respect to such motions, *State v. Giorgi*, 121 R.I. 280, 282, 397 A.2d 898, 899 (1979), we shall interfere with the lower court's decision only in the rarest of cases, *State v. Upham*, 439 A.2d 912, 913 (R.I.1982). With this deferential standard of review in mind, we now turn to the applicable substantive law.

■■■ "A judge has no more difficult duty nor awesome responsibility than the pronouncement of sentence in a criminal case." *State v. Crescenzo*, 114 R.I. 242, 263, 332 A.2d 421, 433 (1975). To guide trial justices in carrying out this responsibility, we have identified the following factors as falling within the scope of constitutionally permissible sentencing considerations: (1) the severity of the crime, (2) the defendant's personal, educational, and employment background, (3) the potential for rehabilitation, (4) the element of societal deterrence, and (5) the appropriateness of the punishment. *See State*

*v. Gordon,* 539 A.2d 528, 530 (R.I.1988); *State v. Bertoldi,* 495 A.2d 247, 253 (R.I. 1985); *State v. Ouimette,* 479 A.2d 702, 705 (R.I.1984); *Upham,* 439 A.2d at 913; *State v. Leonardo,* 431 A.2d 1220, 1222 (R.I.1981).

Most of these factors are multidimensional and require a trial justice to reflect upon a variety of subsidiary factors. *See Bertoldi,* 495 A.2d at 253. For example, with respect to the element of rehabilitation, a trial justice may consider a "defendant's attitude toward society, his sense of remorse, as well as his inclination and capacity to take his place as an honest and useful member of society." *Gordon,* 539 A.2d at 530; *see also Bertoldi,* 495 A.2d at 253. Likewise, a defendant's giving of false testimony may be probative of his attitude toward society and consequently his prospects for rehabilitation. *United States v. Grayson,* 438 U.S. 41, 50–51, 98 S.Ct. 2610, 2616, 57 L.Ed.2d 582, 590 (1978) (defendant's "manipulative defiance of the law is not a cheerful datum for the prognosis a sentencing judge undertakes * * * however, a fact like the defendant's readiness to lie under oath before the judge who will sentence him would seem to be among the more precise and concrete of the available indicia")(quoting *United States v. Hendrix,* 505 F.2d 1233, 1236 (2d Cir.1974)); *State v. Simpson,* 520 A.2d 1281, 1285 (R.I.1987) (willingness to give false testimony may be taken into account during sentencing); *Bertoldi,* 495 A.2d at 253 ("defendant's willingness to take the stand and lie * * * is most assuredly a probative and important piece of information to consider when evaluating a defendant's prospects for rehabilitation"); *see also* Jean E. Maess, Annotation, *Propriety of Sentencing Judge's Consideration of Defendant's Perjury or Lying in Pleas or Testimony in Present Trial,* 34 A.L.R. 4th 888, 892–95 (1984).

■ In addition to the above five factors, a trial justice may also take into consideration a corollary factor to justify reducing a sentence—that a defendant exhibited contrition and consideration for the victims of his or her criminal activity and pled guilty to the crime charged. *See Brady v. United States,* 397 U.S. 742, 751, 90 S.Ct. 1463, 1470, 25 L.Ed.2d 747, 757 (1970) ("encourag[ing] a guilty plea by opportunity or promise of leniency" does not violate Fifth Amendment); *Leonardo,* 431 A.2d at 1222; *see also* 3 ABA Standards for Criminal Justice, Standard 14–1.8 and commentary at 14–43 (2d ed.1986). We are mindful that a defendant, by pleading guilty, waives a broad array of rights, including "the right to trial by jury, the presumption of innocence, the state's burden to prove [one] guilty beyond a reasonable doubt, the privilege against self-incrimination, the right to confront and cross-examine [one's] accusers, the right to testify and call witnesses in [one's] defense, and the right to appeal [one's] conviction to this court." *State v. DePasquale,* 413 A.2d 101, 103 (R.I.1980). By waiving these rights, a defendant, first, has spared the state from expending considerable time, money and other precious judicial and law enforcement resources and, second, has prevented the public scrutiny of and embarrassment to the victim that derives from recounting his or her victimization in a public forum. In exchange therefor a defendant may properly be extended a certain amount of leniency in sentencing. *See Leonardo,* 431 A.2d at 1222; *see also Brady,* 397 U.S. at 750–53, 90 S.Ct. at 1470–71, 25 L.Ed.2d at 757–59.

■ Although we have recognized the propriety of extending leniency when a defendant pleads guilty, we have specifically prohibited the lengthening of a sentence on the basis of a defendant's refusal to plead guilty or his or her insistence on holding the state to its burden of proving guilt beyond a reasonable doubt at trial. *Leonardo,* 431 A.2d at 1222; *State v. Rollins,* 116 R.I. 528, 538, 359 A.2d 315, 320 (1976). In reaffirming this principle today, we are mindful that the rights implicated when a defendant chooses to stand trial, such as the privilege against self-incrimination, the presumption of innocence, the right to a public trial, and the right to call and confront witnesses, are some of the most jealously guarded and deeply embedded rights of our criminal justice jurisprudence, *see State v. Vinagro,* 433 A.2d 945, 946–47 (R.I.1981); *DePasquale,* 413 A.2d at 103, rights that both the Federal and our State Constitutions unconditionally extend to criminal defendants. To exact a price or

impose a penalty upon a defendant in the form of an enhanced sentence for invoking such rights would amount to a deprivation of due process of law, and that we shall not condone. *See Bordenkircher v. Hayes,* 434 U.S. 357, 363, 98 S.Ct. 663, 668, 54 L.Ed.2d 604, 610 (1978) ("[t]o punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort"); *Commonwealth v. Bethea,* 474 Pa. 571, 575 n. 6 379 A.2d 102, 104 n. 6 (1977); Joel E. Smith, Annotation, *Propriety of Sentencing Justice's Consideration of Defendant's Failure or Refusal to Accept Plea Bargain,* 100 A.L.R.3d 834, 835 (1980).

With these principles, as well as our deferential Rule 35 standard of review, in mind, we turn to the case before us.

## II

### A. Fifth Amendment Privilege against Self–Incrimination Claim

■ Reviewing the transcript of the original sentencing hearing, we cannot say that the trial justice improperly considered in his sentencing decision defendant's exercise of his Fifth Amendment privilege against self-incrimination. In making the sentencing determination, the trial justice articulated and applied the very five factors we condoned in *Upham* and *Bertoldi:* the nature of the offense and of the offender, punishment, rehabilitation, and deterrence. In the course of analyzing defendant's potential for rehabilitation, the trial justice indicated that "some program of counseling could be effective if culpability is accepted, [but][t]he problem is [defendant's] continued protestations of innocence." The trial justice proceeded to explain this comment by stating his understanding that treatment would not, and indeed could not, be effective unless and until defendant acknowledged his commission of the crime of which he was convicted. When the trial justice's comments are viewed in the context of his decision, *see Leonardo,* 431 A.2d at 1223, it is readily apparent that he considered defendant's refusal to acknowledge guilt for the limited purpose of assessing defendant's potential for rehabilitation. "Underlying rehabilitation is the thesis that the offender needs assistance in making be-

havioral and/or psychological changes." B. Anthony Morosco, *The Prosecution and Defense of Sex Crimes* § 13.03[3][c], at 13–14 (1994). In order for that assistance to be effective, a defendant must be open and receptive to the proffered treatment. A defendant's adamant denial of engaging in any wrongful conduct—the very conduct that necessitates the treatment—cannot be said to be indicative of any receptiveness to rehabilitation. Accordingly we hold that the trial justice properly considered defendant's refusal to admit perpetrating the molestation in his assessment of defendant's rehabilitative potential. Other courts have similarly recognized the probative value of a defendant's refusal to acknowledge wrongdoing with respect to assessing the element of rehabilitative capacity. *See Gallucci v. State,* 371 So.2d 148, 150 (Fla. Dist. Ct.App.1979) (the plea itself is a step toward rehabilitation); *State v. Farnham,* 479 A.2d 887, 891–92 (Me. 1984) (recognizing the relationship between "defendant's willingness to admit responsibility for his acts and the likelihood of his rehabilitation"); *see also United States v. Derrick,* 519 F.2d 1, 4 (6th Cir.1975); *United States v. Floyd,* 496 F.2d 982, 989 (2d Cir.), *cert. denied,* 419 U.S. 1069, 95 S.Ct. 654, 42 L.Ed.2d 664 (1974).

■ Furthermore, the fact that the trial justice refused to impose a less-than-jail sentence does not on its face and without more indicate an intention to penalize defendant for refusing to waive his Fifth Amendment right and acknowledge guilt. *Leonardo* teaches that a " 'show[ing] of lenience to those who exhibit contrition by admitting guilt does not carry a corollary that the Judge indulges a policy of penalizing those' " who refuse to admit guilt. *Leonardo,* 431 A.2d at 1222 (quoting *United States v. Thompson,* 476 F.2d 1196, 1201 (7th Cir.), *cert. denied,* 414 U.S. 918, 94 S.Ct. 214, 38 L.Ed.2d 154 (1973)). After evaluating defendant's questionable potential for rehabilitation, the trial justice properly determined that "example type" sentencing was demanded, *Giorgi,* 121 R.I. at 282, 397 A.2d at 899 ("element of deterrence at times demands 'example type' sentencing"), and that was an additional sufficient reason to justify sentenc-

ing defendant to serve time in prison. *See Crescenzo,* 114 R.I. at 264, 332 A.2d at 433 (discussing weighing of sentencing factors; strong deterrence element warrants rejecting nonconfinement type of sentence). In conclusion, defendant was not penalized for refusing to waive his Fifth Amendment right; rather he was simply not extended a benefit which he might have enjoyed had he waived his rights and pled either guilty or nolo to the charges.

### B. The Right to Stand Trial

■ Likewise we find no error with respect to the trial justice's consideration of defendant's exercise of his right to stand trial or his corollary right to hold the state to its burden of proving his guilt beyond a reasonable doubt through the presentation of testimony from the child victim.

In considering defendant's motion to reduce his sentence, the trial justice remarked that defendant had "required [the child] to testify" by exercising his right to stand trial, after which defendant indicated his intention to appeal while "knowing full well that what that little girl said from the stand was absolutely true." The defendant claims that these remarks evidence an intent to penalize him for standing trial. We cannot agree.

■ At the outset we are compelled to point out that the right guaranteed to defendant by the Sixth Amendment to the United States Constitution and article 1, section 10, of the Rhode Island Constitution is the right to stand trial and *truthfully* testify in his own behalf. *See Grayson,* 438 U.S. at 54, 98 S.Ct. at 2617, 57 L.Ed.2d. at 592 (the guaranteed right "is narrowly the right to testify truthfully in accordance with the oath"). This defendant did not do. Rather defendant exercised his right and took the opportunity to present false testimony to the court in the hopes of escaping conviction and punishment.

The trial justice's remarks clearly related to the fact that defendant had, while under a solemn oath and in a court of law, knowingly and intentionally perpetrated a falsehood. The trial justice proceeded to identify the impact upon the victim of defendant's decision to stand trial and tell a falsehood—

namely, that she was forced to endure the trauma of testifying about embarrassing and intimate sexual details and to undergo an intense cross-examination.

In the face of defendant's plea for leniency, the trial justice's consideration of defendant's false testimony and the impact of the trial upon the victim was proper as these factors related to his prospects for rehabilitation. With respect to defendant's falsehood, we stated in *State v. Bertoldi,* that a defendant's willingness to take the stand and lie

> "not only demonstrates a disrespect for the law and the judicial system, but also evidences an important character trait. It reveals that the defendant is perfectly willing to commit a crime in an attempt to conceal an earlier crime. It is most assuredly a probative and important piece of information to consider when evaluating a defendant's prospects for rehabilitation." 495 A.2d at 253.

The fact that defendant claimed to have lied because of an event he endured in his childhood does not cast a different light onto his falsehood or justify in any way, shape, or form his decision to give false testimony while under a solemn judicial oath to tell the truth.

Likewise, consideration of the impact of the trial upon the child victim, especially in the face of a posttrial confession, is proper as it reflects a defendant's attitude toward his victim and society. In *State v. Farnham,* the Supreme Judicial Court of Maine upheld consideration of this factor in circumstances very similar to those in the case at hand, noting that

> "defendant's criminal conduct, involving as it did the sexual abuse of a young girl, imposed substantial suffering on another. The certain consequence of his insistence on trial was that her suffering would be exacerbated in a public forum with the young prosecutrix, as inevitably the only witness, recounting defendant's violation of her person on direct examination and defense counsel attacking her credibility on cross-examination. Although defendant had an absolute right to a trial and to conduct vigorous cross-examination in connection with a crime for which he soon

after admitted his guilt, he cannot escape the fact that his exercise of those rights are probative of his attitude towards the victim and society." 479 A.2d at 892.

The defendant argues that *Farnham* is distinguishable because the defendant there admitted his guilt posttrial but prior to sentencing. We deem this to be a distinction without a difference because the trauma to the victim of testifying about the intimate, and often repulsive, details relating to the violation of one's person remains the same whether a defendant confesses to the violative act one minute or one year after the victim leaves the witness stand.

We note that this was not a case in which the trial justice threatened pretrial to impose a harsher sentence if defendant opted to stand trial, *see United States v. Stockwell*, 472 F.2d 1186, 1187 (9th Cir.), *cert. denied*, 411 U.S. 948, 93 S.Ct. 1924, 36 L.Ed.2d 409 (1973), or one in which the trial justice stated posttrial that a more severe sentence was warranted because defendant wasted time, public funds, and resources by insisting on a trial, *see United States v. Hutchings*, 757 F.2d 11, 13–14 (2nd Cir.), *cert. denied*, 472 U.S. 1031, 105 S.Ct. 3511, 87 L.Ed.2d 640 (1985); *United States v. Sales*, 725 F.2d 458, 460 (8th Cir.1984).

Finally we point out that under the holdings of *Simpson* and *Bertoldi*, the trial justice could have enhanced defendant's sentence with additional time to serve for intentionally giving what was, by defendant's own admissions, false testimony. However, the trial justice chose not to do so, and we do not interfere with the exercise of his discretion in that respect.

The length of the sentence imposed was well within the parameters set forth by the Legislature in G.L.1956 (1981 Reenactment) § 11–37–8.4, as enacted by P.L.1984, ch. 59, § 2 ("[e]very person who shall commit second degree child molestation sexual assault shall be imprisoned for not less than six (6) years nor more than thirty (30) years"). Given our limited scope of review, we hold that the trial justice remained soundly within the bounds of his discretion. *Gordon*, 539 A.2d at 529.

For the reasons stated above, the appeal of the defendant is denied and dismissed and the order of the trial justice is affirmed. The papers of this case may be remanded to the Superior Court.