In the Matter of the Interest of L. B. T.,
A Minor,

E. W., Petitioner-Appellant,

v.

E. and H. B.,
Cross-Petitioners-Appellees,

and

Michael Reagan, As Commissioner of
Iowa Department of Social Services,
as guardian of L. B. T., Appellee.

No. 66798.

Supreme Court of Iowa.

April 21, 1982.

Robert A. Burnett, Jr., Des Moines, for appellant.

Robert C. Oberbillig, Des Moines, for appellees.

Thomas J. Miller, Atty. Gen., John G. Black, Sp. Asst. Atty. Gen., and Brent D. Hege, Asst. Atty. Gen., for appellee Dept. of Social Services.

Considered by LeGRAND, P. J., and HARRIS, McCORMICK, LARSON, and SCHULTZ, JJ.

HARRIS, Justice.

There were competing petitions to adopt L. B. T. (Larry) who was born June 26, 1978. Petitioner provided foster care for Larry from the time he was four days old until after she filed her petition for adoption. A few weeks later Larry was removed by court order to another foster home. Cross-petitioners are adoptive parents of Larry's older brother and sister. Rights of the natural parents were terminated and are not involved. The trial court determined the cross-petitioners, not the petitioner, should be allowed to adopt Larry and we agree.

Before his relationship with his parents was terminated Larry was placed in petitioner's home on a foster basis for the period of much of his infancy. This was thought necessary in order to accord his natural parents the opportunity to develop into adequate parents. During the 28 months thus spent it was probably inevitable that a bond of affection should develop

between the petitioner and Larry. Her claim stands almost entirely on that bond. As will be explained, the cross-petitioners in all other respects tower over the petitioner as potential adoptive parents.

■ Controlling principles are so well known that they tend to become obscured. Our review is de novo. § 600.14, The Code 1979. We give weight to but are not bound by the findings of the trial court. Iowa R.App.P. 14(f)(7). The central and controlling consideration is what is best for Larry. In sorting through the competing rights and claims in adoption or child custody matters, courts are sensitive to the crucial importance of the determination to be made. They are alert to the fact that a crushing blow will fall on any disappointed claimant and that the rights of all claimants are of first importance. But the various claimants' rights must in the end yield to the best interests of the child. *Matter of Adoption of Gustafson*, 240 N.W.2d 674, 676 (Iowa 1976).

Petitioner is a 43 year-old widow. Her adult son, by her first marriage, lives in Illinois. Her second son, Ralph, was 14 years old at the time of trial. Petitioner was widowed when Ralph was 22 months old. Petitioner receives about $900 per month income from social security and veteran's widow's benefits.

She also receives income from babysitting which she does in her home. She is licensed for foster care. *See* chapter 237A, The Code. She has been foster mother to over 50 children. In this capacity she received Larry into her home June 30, 1978. Petitioner and Ralph are much involved in activities of their church. Ralph is in a program which provides him with a "big brother." Petitioner sees this as helping provide Ralph with a male role model.

The social security benefits will cease when Ralph reaches his eighteenth birthday. Petitioner was paid about $150 per month for Larry's foster care but she will not be relicensed.

Cross-petitioners are in their early thirties. Besides Larry there are three other adopted children, including Larry's natural brother and sister. The cross-petitioners are both college graduates and live in a comfortable home. The prospective father operates a construction business; the prospective mother is part-time teacher at a nearby school. Their combined earnings come to about $25,000 per year. Theirs is a superior and closely knit family which is also much involved with their church.

In determining that the cross-petitioners should be allowed to adopt Larry the trial court listed eight matters:

(1) the respective age and education of the prospective parents;

(2) their financial abilities, with special consideration to medical and educational expenses;

(3) the advantages to be offered by a two-parent family when contrasted with a single-parent family;

(4) the comparative ability of the parties to give the child love, attention, and kindness;

(5) the physical structure and adequacy of the two homes;

(6) whether or not siblings should be kept together;

(7) the comparative ability of the two families to discipline the child, to inspire, nurture and educate him and develop his thinking processes; and

(8) the availability of other relatives to assist and support the adoptive parent-child relationship.

Although not included in the foregoing list the trial court explained its concern with the bonding attachment between petitioner and Larry and the trauma which might result upon his removal from a psychological parent's home.

■ There was considerable evidence received to show that a psychological bonding occurs between a baby and the person who provides its care during the first year of life. The adult in such a relationship becomes a "psychological parent," so that severance of the relationship thereafter is said

to result in trauma and harm to the child.[1] We are persuaded that bonding and its effects are important matters to be considered and weighed in the balance.

Except for the fact of Larry's long placement in the petitioner's home and the relationship that resulted it is clear that on all counts the trial court was right in favoring the cross-petitioners. It would plainly be best for Larry to grow to manhood as a son of the cross-petitioners. We are especially struck by the presence there of his natural brother and sister. Wherever possible brothers and sisters should be kept together, a factor we have consistently recognized. *Doan Thi Hoang Anh v. Nelson*, 245 N.W.2d 511, 517 (Iowa 1976). It is important to Larry too that he will have the advantages of both a father and mother, who on this record seem better able to provide him with the support and direction he will need.

The developed relationship between petitioner and Larry is not enough to overtake the vastly superior advantages which the cross-petitioners can offer as adoptive parents.

AFFIRMED.

---

1. In considering this factor we have been careful to be unaffected by the fact that Larry has already been removed from petitioner's home.