**IN THE COURT OF APPEALS OF IOWA**

No. 14-1375
Filed October 15, 2014

**IN THE INTEREST OF N.S. and D.Q.,**
**Minor Children,**

**J.S., Mother,**
    Appellant,

**D.Q., Father,**
    Appellant.

_____

Appeal from the Iowa District Court for Polk County, Joseph Seidlin, District Associate Judge.

A mother and father appeal separately from the order terminating their parental rights. **AFFIRMED.**

Kevin Hobbs, West Des Moines, for appellant mother.

John Heinicke of Kragnes & Associates, P.C., Des Moines, for appellant father.

Thomas J. Miller, Attorney General, Kathrine Miller-Todd, Assistant Attorney General, John P. Sarcone, County Attorney, and Andrea Vitzthum, Assistant County Attorney, for appellee State.

Erin Mayfield of the Youth Law Center, Des Moines, for minor children.

Considered by Danilson, C.J., and Vogel and Bower, JJ.

**DANILSON, C.J.**

A mother appeals the termination of her parental rights to her children, N.S. and D.Q. The father of D.Q. also appeals the termination of his parental rights.[1] Although the mother has recently made strides in her drug addiction rehabilitation and in dealing with her mental health issues, she has been unable to establish that she can maintain her sobriety or parent the children on a consistent basis. Similarly, while the father has obtained stable housing and a full-time job, he has failed to engage in therapy, drug testing, or a batterer education program, as ordered. "[O]ur legislature has carefully constructed a time frame to provide a balance between the parent's efforts and the child's long-term best interests." *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). The parents' past decisions and the time the children have endured in limbo support affirming the district court's order terminating the mother's and the father's parental rights.

**I. Background Facts and Proceedings.**

N.S. was born in February 2009, and D.Q. was born in January 2013. The mother and father were both twenty-six years old at the time of the termination hearing.

The mother has a long history of substance abuse. She began using narcotics at the age of fourteen. By age fifteen or sixteen, she was using methamphetamine daily. She was placed in various treatment programs while still a minor, but she did not successfully complete any program. The father has a history of domestic abuse and recreational drug use. He testified his "drug of choice" is alcohol, although he has also abused marijuana and

---

[1] The biological father of N.S. is deceased. No putative fathers were identified.

methamphetamine, as well as prescription pills. In February 2011, he was charged with operating while intoxicated, and he pled guilty. In August 2011, he was charged with domestic abuse causing injury and pled guilty. In November 2012, he was charged with domestic assault, second offense, and harassment, and he pled guilty to both charges.

In May 2013, the father was incarcerated for failure to comply with the terms of his probation. The mother became homeless. She voluntarily sent the children to live with their aunt and uncle in June 2013.

The Iowa Department of Human Services (DHS) became involved with the family in September 2013 when DHS received a tip that the mother had been arrested on drug and child endangerment charges, for caring for the children when under the influence of drugs. The children were legally placed in the custody of their aunt and uncle, with whom they continued to reside.

As part of the father's probation, he was ordered to live at the Fort Des Moines correctional facility from August 20, 2013, to January 20, 2014.

On September 26, 2013, the State filed petitions alleging the children were in need of assistance. After an uncontested hearing on October 4, 2013, the court entered an order confirming the children's removal and continuing their placement.

The mother was admitted to inpatient drug treatment in October 2013. She admitted taking Oxycontin one to two times daily in the period leading up to her admittance. The mother was unsuccessfully discharged on October 18, 2013. She continued to use drugs actively, including intravenously. She also relapsed on methamphetamine and struggled with mental health issues.

Both children were adjudicated to be a child in need of assistance on November 20, 2013.

The mother continued to struggle with drug abuse and mental health issues. On May 8, 2014, the mother was arrested and jailed for theft of a motor vehicle. She remained in the Polk County jail until she was released on bond on June 14, 2014. The criminal charge was still pending at the time of the termination hearing.

At the termination hearing on July 16, 2014, the mother testified she had last used drugs on the day of her arrest. However, she failed to provide a drug screen when she was asked on June 25, 2014. Since her arrest, she had been attending an outpatient drug rehabilitation program. She had also attended four parenting classes and was participating in AA/NA two times per week. She was residing in a domestic violence shelter and had recently obtained a job as a server. The mother was diagnosed with severe depression and severe anxiety, and she had started seeing a counselor. The mother admitted she had only seen the children "a handful of times" since she voluntarily sent them to live with their aunt and uncle in June 2013.

The father testified he had obtained his own place to live and a full-time job. He minimized his failure to complete the batterer's education program and his failure to attend AA/NA meetings as was required for his probation. He stressed that he had not provided a "dirty" drug or alcohol test since his release. He missed screenings on four different occasions, as well as once providing a diluted screen and once providing a screen that was not the appropriate body

temperature. The father also testified he had not attended individual therapy because he did not have insurance and did not believe he would benefit from it.

The court terminated the mother's parental rights to N.S. and D.Q., pursuant to Iowa Code sections 232.116(1)(d), (e), and (*l*) (2013). Her parental rights to D.Q. were also terminated pursuant to section 232.116(h). D.Q.'s father's parental rights were terminated pursuant to section 232.116(d), (e), and (h).

The mother and father appeal.

## II. Standard of Review.

Our review of termination decisions is de novo. *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). We give weight to the juvenile court's findings, especially assessing witness credibility, although we are not bound by them. *D.W.*, 791 N.W.2d at 706. An order terminating parental rights will be upheld if there is clear and convincing evidence of grounds for termination under section 232.116. *Id.* Evidence is "clear and convincing" when there are no serious or substantial doubts as to the correctness of the conclusions of law drawn from the evidence. *Id.*

## III. Discussion.

Iowa Code chapter 232 termination of parental rights follows a three-step analysis. *P.L.*, 778 N.W.2d at 39. The court must first determine whether a ground for termination under section 232.116(1) has been established. *Id.* If a ground for termination has been established, the court must apply the best-interest framework set out in section 232.116(2) to decide if the grounds for termination should result in termination of parental rights. *Id.* Finally, if the

statutory best-interest framework supports termination of parental rights, the court must consider if any of the statutory exceptions set out in section 232.116(3) weigh against the termination of parental rights. *Id.*

**A. Mother's Appeal.**

*Grounds for Termination.* Although the juvenile court terminated the mother's parental rights on multiple grounds, the mother challenges only one of those grounds, Iowa Code section 232.116(d), on appeal. When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the order on any ground we find supported by the record. *D.W.*, 791 N.W.2d at 707. The mother's failure to raise the remaining statutory grounds for termination waives any claim of error related to those grounds. *See Hyler v. Garner*, 548 N.W.2d 864, 870 (Iowa 1996) ("[O]ur review is confined to those propositions relied upon by the appellant for reversal on appeal.").

There is clear and convincing evidence the grounds for termination of the mother's parental rights to both children have been met pursuant to Iowa Code sections 232.116(1)(e) and (*l*). There is also clear and convincing evidence that grounds for terminating the mother's parental rights to D.Q. have been met pursuant to section 232.116(h).

*Best Interests of the Children.* Even if a statutory ground for termination is met, a decision to terminate must still be in the best interests of a child after a review of section 232.116(2). *P.L.*, 778 N.W.2d at 37. In determining the best interests of the child, we give primary consideration to "the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and

to the physical, mental, and emotional conditions and needs of the child." *See* Iowa Code § 232.116(2).

The children have not been in the mother's care since June 2013, when she voluntarily sent them to live with their aunt and uncle. The mother has not maintained significant contact with the children since that time, having only seen them, in her words, a "handful of times." At the time of the termination hearing, she had recently been released from jail on bond and had pending criminal charges against her. She was living in a domestic violence shelter and did not have stable housing for herself or the children.

As the juvenile court recognized, "The children's uncle and aunt have amply demonstrated that they are the best answer to ensure these children's safety, for furthering their long-term nurturing and growth, and for meeting their physical, mental and emotional condition and needs. They are willing to adopt the children." Termination will allow the children to achieve permanency. *See In re A.M.*, 843 N.W.2d 100, 113 (Iowa 2014) (citing *In re J.E.*, 723 N.W.2d 793, 802 (Iowa 2006) (Cady, J., concurring specially) (noting the "defining elements in a child's best interest" are the child's safety and her "need for a permanent home")).

We agree with the juvenile court's finding that it is in the children's best interests to terminate the mother's parental rights.

***Potential Grounds Not to Terminate.*** Iowa Code section 232.116(3) provides that "[t]he court need not terminate the relationship between the parent and child" under certain circumstances. A finding under subsection (3) allows the court not to terminate. *See P.L.*, 778 N.W.2d at 39. "The factors weighing

against termination in section 232.116(3) are permissive, not mandatory, and the court may use its discretion, based on the unique circumstances of each case and the best interests of the child, whether to apply the factors in this section to save the parent-child relationship. *A.M.,* 843 N.W.2d at 113. The mother maintains that termination of her parental rights is not necessary, pursuant to sections 232.116(3)(a) and (c). The juvenile court expressly found, "Clear and convincing evidence that the termination would be detrimental to the children due to the closeness of the parent-child relationship has simply not been shown." The mother mischaracterizes the law by stating on appeal that "no evidence was presented to indicate a lack of parent/child bond." There is no presumption of the parent-child bond, nor does the State have to show a complete lack of a parent-child bond. Here, we are unable to conclude that termination of the mother's parental rights would be detrimental to the children or that any parent-child bond weighs against termination. *See* Iowa Code § 232.116(3)(c).

The mother also contends that termination is not necessary because the children's aunt and uncle have legal custody. *See* Iowa Code § 232.116(3)(a). Having considered section 232.116(3)(a), the juvenile court rejected its applicability in this case, stating in the order to terminate parental rights, "Holding open the possibility that either of these parents will be someday be in a position to take [N.S.] or [D.Q.] back would translate into intolerable hardship for the children. The Court will not subject these children to the further uncertainty and instability of a continuing relationship with these parents." (Internal citation omitted.) After considering the circumstances in this case, we agree with the

juvenile court that no permissive factor or exception in section 232.116(3) applies to make termination unnecessary.

We affirm the juvenile court's termination of the mother's parental rights to both children.

**B. Father's Appeal.**

*Grounds for Termination.* When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the order on any ground we find supported by the record. *D.W.*, 791 N.W.2d at 707. Iowa Code section 232.116(1)(h) provides that termination may be ordered when there is clear and convincing evidence the child is three years of age or younger, has been adjudicated a CINA, has been removed from the physical custody of the parent for at least six of the last twelve months, and cannot be returned to the parent's custody at the time of the termination hearing. The father does not dispute the existence of the first three elements under section 232.116(1)(h). He does contend there was not clear and convincing evidence D.Q. could not be returned to his care at the time of the termination hearing.

At the time of the termination hearing, the father had recently obtained a full-time job and stable housing. The caseworker testified the father was loving and appropriate during the scheduled visits he attended. However, the father had attended visits only sporadically and those visits were still fully-supervised. The caseworker had not been able to visit the father's new home to check for its appropriateness because the father had not reported he moved. The father also missed several scheduled drug tests and provided two drug tests that were

believed to be compromised.[2]   Additionally, the father had not completed a required batterer education program even though he was ordered to take it approximately two years prior to the termination hearing.

"Ultimately, the issue is not parental culpability but whether the statutory requirements have been met." *A.M.*, 843 N.W.2d at 111 n.9.  Although the father consistently cared for D.Q. during the first four months of his life, the father has seen D.Q. only sporadically since that time due to his incarceration and failure to attend visits regularly.  *See In re M.M.S.*, 502 N.W.2d 4, 8 (Iowa 1993) ("[The father] cannot use his incarceration as a justification for his lack of relationship with the child.  This is especially true when the incarceration results from a lifestyle that is chosen in preference to, and at the expense of, a relationship with a child.").  The father has not been able to establish that he is living drug and alcohol free and that he can parent D.Q. on a consistent basis.  D.Q. should not be required to wait in limbo in hope that the father can become a stable and reliable caretaker.  As our supreme court has stated, "[O]ur legislature has carefully constructed a time frame to provide a balance between the parent's efforts and the child's long-term best interests."  *D.W.*, 791 N.W.2d at 707.  Furthermore, the DHS caseworker and the guardian ad litem recommended termination.  *See A.M.*, 843 N.W.2d at 111.

Here, there is clear and convincing evidence the grounds for termination, pursuant to section 232.116(1)(h), have been met.

---

[2] One test was diluted and another was not tested because it was not the appropriate body temperature.

*Best Interests of the Child.* The father contends termination of his parental rights is not in the best interests of D.Q. D.Q. was eighteen months old at the time of the termination hearing. Although he lived with his father for the first few months of his life, since that time, D.Q. has seen his father only sporadically. Termination will allow D.Q. to achieve permanency. Additionally, termination will allow D.Q. and N.S. to remain in the same home. *See In re L.B.T.*, 318 N.W.2d 200, 202 (Iowa 1982) ("Whenever possible [siblings] should be kept together . . . .").

We agree with the juvenile court's finding that it is in the child's best interests to terminate the father's parental rights.

*Potential Grounds Not to Terminate.* The father maintains termination of his parental rights is not necessary, pursuant to section 232.116(3)(c), because D.Q. is so bonded to the father that termination would be detrimental to D.Q.

D.Q. was only eighteen months old at the time of the termination hearing. The father stopped having regular contact with D.Q. in May 2013, when he was incarcerated. While still incarcerated, he questioned the paternity of D.Q. in October 2013 and was not permitted contact with D.Q. until paternity was established in November 2013. Even then, he did not make an effort to attend visitation until after the disposition hearing on January 3, 2014. The father attended one visit in January, two in February, three in March, one in April, and two in May. At the termination hearing on July 16, 2014, the father testified he had not seen D.Q. since May 28, 2014. Considering the age of D.Q. and the

limited contact between him and the father, we cannot say D.Q. is so bonded to the father that termination of the father's parental rights would be detrimental.

Upon our de novo review, we conclude no exception or factor in section 232.116(3) applies to make termination unnecessary.

**IV. Conclusion.**

We affirm the juvenile court's termination of the mother's parental rights to both children. We affirm the juvenile court's termination of the father's parental rights to D.Q.

**AFFIRMED.**