# IN THE COURT OF APPEALS OF IOWA

No. 14-1145
Filed November 26, 2014

**IN THE INTEREST OF L.A., R.A., and M.A.,**
      **Minor Children,**

**N.F., Mother,**
      Appellant.
_____

      Appeal from the Iowa District Court for Black Hawk County, Daniel L.

Block, Associate Juvenile Judge.


      A mother appeals the termination of her parental rights to three children.

**AFFIRMED.**


      Michelle Jungers of Iowa Legal Aid, Des Moines, for appellant.

      Thomas J. Miller, Attorney General, Kathrine S. Miler-Todd, Assistant

Attorney General, Thomas J. Ferguson, County Attorney, and Kathleen Hahn,

Assistant County Attorney, for appellee.

      Melissa Anderson Seeber, Juvenile Public Defender, Waterloo, attorney

and guardian ad litem for minor children.


      Considered by Danilson, C.J., and Doyle and Tabor, JJ.

**TABOR, J.**

A mother, Nicole, appeals the termination of her parental rights to three of her five children: R.A. (born in 2010), M.A. (born in 2011), and L.A. (born in 2013).[1]  The main issue leading to termination of her rights was unresolved domestic violence.  The police arrested the children's father, Fernando, multiple times for assaulting Nicole, yet she denies domestic abuse occurred and remains in a romantic relationship with him.  Nicole also has missed nearly half of her scheduled visits with the children after their removal from her care.

Given these circumstances, we affirm the termination of her parental rights.  We find the State proved grounds for termination by clear and convincing evidence, termination is in the best interests of the children, and the district court appropriately denied the mother's request for an additional six months to work toward reunification.

The family first came to the attention of the Iowa Department of Human Services (DHS) in January 2012 after police arrested Fernando for domestic abuse assault.  Both parents were under the influence of alcohol at the time of the incident, and the DHS determined the children were placed at risk.  Nicole reported drinking so much she could not recall what happened.  Police were dispatched to the family's residence four times in May 2012 for "possible fighting."  On June 6, 2012, the police were again sent to the residence in reference to an assault.  They found Nicole crying and bruised.  She told the officers that Fernando was not responsible for her bruising and she bruised

---

[1] This appeal does not involve Nicole's two older children: J.R., age eleven, and A.R., age eight, who have a different father.  Their father died in 2006 in California.

easily due to a blood disorder. Police charged Fernando with domestic abuse assault causing bodily injury and the court issued an order prohibiting him from contacting Nicole.

In October 2012, the juvenile court adjudicated R.A. and M.A. (along with their two half-siblings) to be children in need of assistance (CINA) based on the domestic violence in the home. The court allowed the children to remain in their mother's home, but ordered her to obtain mental health treatment, which was to include domestic violence counseling. Nicole did not obtain a mental health evaluation until more than one year later and never did seek counseling specific to domestic violence.

L.A. was born prematurely in April 2013 and had significant health concerns. All five children were removed from the mother's care on July 27, 2013, following more reports of domestic abuse by Fernando and alcohol abuse by both parents. The mother obtained a substance abuse evaluation in October 2013, but initially refused to sign a release form to allow DHS access to review her records. The court adjudicated L.A. as a CINA on November 25, 2013, citing concerns of ongoing domestic violence, lack of parental cooperation with the DHS, and suspected alcohol abuse. A court order prohibited contact by Fernando.[2]

The State filed a petition to terminate parental rights on February 13, 2014. The court held a termination hearing on April 14, 2014. On June 27, 2014, the juvenile court terminated the mother's parental rights under Iowa Code

---

[2] The father has not seen the children since July 2013. The juvenile court also terminated his parental rights, but he is not a party to this appeal.

sections 232.116(1)(e) and (h) (2013). Paragraph (h)[3] applies only to M.A. and L.A. The older child, R.A., turned four years of age before the State filed its termination petition. The mother now appeals.

We review termination of parental rights de novo. *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014). We are not bound by the juvenile court's factual findings, but we give them weight, especially when it comes to witness credibility. *Id.*

## I.    Grounds for termination

The mother challenges the termination of her parental rights under paragraph (e).[4] Under that provision, the district court must find clear and convincing evidence of three elements: (1) the children have been adjudicated CINA under section 232.96, (2) the children have been removed from the physical custody of their parents for a period of at least six consecutive months, and (3) the parents have not maintained significant and meaningful contact with the children during the previous six consecutive months and have made no reasonable efforts to resume care of the child despite being given the opportunity to do so. Iowa Code § 232.116(1)(e).

---

[3] To prove paragraph (h) by clear and convincing evidence the State needs to show:
(1) The child is three years of age or younger; (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96; (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days; (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time. Iowa Code § 232.116(1)(h).

[4] When the court terminates parental rights on more than one statutory ground, we need only find termination proper under one ground to affirm. *In re S.R.*, 600 N.W.2d 63, 64 (Iowa Ct. App. 1999). Because the mother does not advance an argument on appeal concerning paragraph (h), we also believe the termination may be upheld on that ground as to the two younger children.

On appeal, the mother challenges the court's conclusion she did not maintain significant and meaningful contact with her children. "Significant and meaningful contact" means "the affirmative assumption by the parents of the duties encompassed by the role of being a parent." *Id.* The code defines this affirmative duty as including financial obligations, as well as, "a continued interest in the child, a genuine effort to complete the responsibilities prescribed in the case permanency plan, a genuine effort to maintain communication with the child, and requires that the parents establish and maintain a place of importance in the child's life." *Id.*

The termination order discussed several serious shortfalls in the mother's efforts to complete the responsibilities prescribed in the case permanency plan and to maintain regular contact with the children. We agree with the juvenile court's conclusions.

The biggest problem was Nicole's minimization, if not outright denial, of the domestic violence in the home and its impact on her ability to safely parent her children. The mother testified her relationship with the father of the two older children involved domestic abuse but denied she suffered abuse during her current relationship with Fernando, the father of the three younger children. Nicole said the police did not have to be called the times Fernando was arrested, blaming her children for playing with her cell phone. She also testified her daughters called for help because they wanted her attention and "they don't want me to be with anybody."

The criminal complaint from the June 2012 domestic abuse incident, entered an an exhibit by the State, revealed a more serious problem. The responding officer to a 911 call found Nicole "extremely fearful of the defendant in that she was very animated in defending the defendant from the police." The officer recounted that Nicole had "obvious injuries" to her arms and back, including visible scratches, red marks and recent bruising. After this incident, Nicole denied that she was assaulted by Fernando, and denied case workers access to her home to check on the welfare of the children.

Nicole's testimony revealed a fundamental misunderstanding of the concept of intimate violence: her definition of domestic abuse was "when a man or a woman beats up on each other to a point where sometimes it ends up in the hospital." Later in her testimony, she acknowledged someone being hit and receiving a bruise could be called domestic abuse but insisted she bruised easily. Nicole has taken no steps to provide the children with a safe home. She has refused to attend domestic violence counseling. Nicole testified she had every intention to continue a romantic relationship with Fernando, giving no thought to its impact on the children. The record shows Nicole is not willing to make the necessary lifestyle changes to fulfill the case permanency plan and reunite with her children.

The second biggest problem was Nicole's failure to participate in services essential for reunification. She missed 47 of 106 visitations offered since the children were removed in July 2013. Moreover, despite being involved with DHS since 2012, Nicole only agreed to cooperate with DHS and signed release forms

for her substance abuse and mental health evaluations on April 10, 2014, four days before the termination hearing. Up until that time, she refused to provide the DHS with any information.

The mother has not made a genuine effort to assume the affirmative role of being a parent because she has failed to appreciate the impact of domestic violence on her children and failed to cooperate with DHS in obtaining essential services, including attendance at visitations. Therefore, the State proved by clear and convincing evidence the elements necessary to terminate parental rights under paragraph (e).

## II.    Best interests

The mother asserts termination of her parental rights is not in the children's best interests. Specifically, she contends severing her rights to R.A., M.A., and L.A., could lead to a separation of siblings if she is later reunited with her two oldest children, J.R. and A.R.

Our consideration of best interests focuses on the children's safety, the best placement for furthering their long-term nurturing and growth, and their physical, mental, and emotional condition and needs. *In re P.L.*, 778 N.W.2d 33, 37 (Iowa 2010) (citing Iowa Code § 232.116(2)). Part of those emotional needs may include maintaining close bonds among siblings and half-siblings. Our supreme court has consistently recognized: "Wherever possible brothers and sisters should be kept together." *In re L.B.T.*, 318 N.W.2d 200, 202 (Iowa 1982).

Currently, all five children are placed with the same foster family and have been since November 2013. The evidence showed they are doing well in their

current situation. The foster parents have expressed an interest in adopting all five children.

At the time of the termination hearing, the Family Safety, Risk, and Permanency worker testified the two older children would still have visitation with Nicole if her rights were terminated to the three younger children. Beyond that information, the record is unclear as to the current status of the two older children. They were adjudicated CINA on October 12, 2012, but the mother did not offer any evidence showing her progress toward reunification with the older children.

Without such information, we are not willing to deny the younger children the permanency they deserve, while waiting for a sibling reunion that may never arrive. Given the mother's failure to take advantage of services, the significant number of missed visitations, along with her determination to remain in a relationship with Fernando despite threats of domestic abuse, the evidence supports termination as being in the best interests of the younger children.

## III. Additional time

Finally, the mother asks for an additional six months to reunify with her children under Iowa Code section 232.104(2)(b). As noted above, the mother did not allow DHS access to her evaluations until a few days before the termination hearing. Despite being offered services since 2012, Nicole failed to take full advantage of the opportunities to work toward reunification.

The children's guardian ad litem, Melissa Anderson-Seeber, spoke convincingly against an extension:

> I wish [Nicole] had spent more time trying to accept services than to fight us. This is a case where she fought the department. She fought FSRP the whole way, and its truly—it's sad that we're in this position, but I don't believe a deferral of permanency is going to get us in a position that we can return her children in six months . . . . [T]he domestic violence issue is very concerning, that is so damaging to the children.

Any gestures by the mother to cooperate with the DHS at the eleventh hour do not provide a sound basis to postpone the children's chance at a permanent placement. *See In re J.B.L.*, 844 N.W.2d 703, 706 (Iowa Ct. App. 2014) (upholding denial of six additional months when record showed parent could not provide safe home for child and foster family offered stability and permanency).

**AFFIRMED.**