# IN THE COURT OF APPEALS OF IOWA

No. 18-0531
Filed September 12, 2018

**IN THE INTEREST OF L.C. and K.C.,**
**Minor Children,**

**A.C., Father,**
 Appellant.

_____

Appeal from the Iowa District Court for Clay County, Charles K. Borth, District Associate Judge.

A father appeals from termination of his parental rights to two children. **AFFIRMED.**

Michael H. Johnson of Johnson Law Firm, Spirit Lake, for appellant father.

Thomas J. Miller, Attorney General, and Anagha Dixit, Assistant Attorney General, for appellee State.

Shawna L. Ditsworth of Ditsworth Law, Spirit Lake, guardian ad litem for minor children.

Considered by Danilson, C.J., Vogel, J., and Blane, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2018).

**BLANE, Senior Judge.**

A.C., father of L.C. and K.C., appeals the court's order terminating his parental rights to his two children. Upon our de novo review of the record, we affirm.

**I. Standard of Review.**

This court reviews termination proceedings de novo. *See In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014). When a juvenile court relies on multiple statutory grounds to terminate a parent's rights, we are at liberty to affirm its ruling on any one of the supported grounds. *See In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012).

Clear and convincing evidence is needed to establish the grounds for termination. *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006). Where there is clear and convincing evidence, there is no serious or substantial doubt about the correctness of the conclusion drawn from the evidence. *In re D.D.*, 653 N.W.2d 359, 361 (Iowa 2002). The paramount concern in termination proceedings is the best interests of the child. *In re L.L.*, 459 N.W.2d 489, 493 (Iowa 1990).

> [T]he proper analysis under [Iowa Code chapter] 232 is first for the court to determine if a ground for termination exists under section 232.116(1) [(2018)]. If a ground exists, the court may terminate a parent's parental rights. Iowa Code § 232.116(1). In considering whether to terminate, "the court shall give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." *Id.* § 232.116(2). Any findings in this regard should be contained in the judge's decision. Finally, before terminating a parent's parental rights, the court must consider if any of the exceptions contained in section 232.116(3) allow the court not to terminate. *Id.* § 232.116(3).

*In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010).

**II. Facts and Procedural Background.**

On January 12, 2017, a child protective assessment was initiated by the Iowa Department of Human Services (DHS) based on an allegation that the father, A.C., and mother, H.B., got into a physical fight—A.C. kicked H.B. in the stomach—in the presence of L.C., who was six months old at the time. It was also determined that A.C. and H.B. were using marijuana while caring for L.C. L.C. was removed and placed in the custody of his paternal grandmother. Following an uncontested hearing on March 17, L.C. was adjudicated as a child in need of assistance (CINA), under Iowa Code section 232.2(6)(b), (c)(2), and (n) (2017). The court ordered L.C.'s custody to remain with his paternal grandmother. A CINA dispositional hearing was held on April 7, and the court again ordered L.C. remain in the custody of his paternal grandmother subject to protective supervision by DHS.

H.B. gave birth to K.C. in June 2017. Upon the State's application for ex parte emergency removal filed June 12, the court placed K.C. in the custody of DHS for placement in family foster care, which took place directly from the hospital.[1] The court was later advised that K.C.'s meconium test at birth was positive for marijuana. Following an emergency removal hearing held on June 16, the court ordered K.C. remain in the custody of DHS and continued placement in family foster care. Following an adjudicatory hearing on July 7, K.C. was adjudicated as a CINA under section 232.2(6)(c)(2), (g), and (n). On August 18, the court held a CINA review hearing in L.C.'s case and simultaneous CINA dispositional hearing in K.C.'s case and again ordered that custody of these

---

[1] Because it was unknown at the time whether A.C. was the father of K.C., the paternal grandmother, who had custody of L.C., did not want to also provide care for K.C.

children remain as previously set. Timely CINA review hearings were held with the children remaining in placement.

On January 3, 2018, the State filed its petition to terminate parental rights of A.C. and H.B. to L.C. and K.C. The petition as to A.C. alleged termination was appropriate under Iowa Code section 232.116(1)(h) and *(l)* (2018). Both A.C. and H.B were properly served with the petition. After a continuance, the termination hearing was held on February 27. H.B. failed to attend the termination hearing, but she was represented by counsel.[2] A.C. attended the termination hearing and was represented by counsel.

At the time of the termination hearing, A.C. was 24 years old and H.B. was 21 years old. They were never married and broke off their relationship in September 2017. Both parents had a long and extensive history of drug use, including marijuana and methamphetamine. A.C. admitted he began using marijuana at twelve or thirteen years of age and methamphetamine at eighteen. Because of his drug use, A.C. has generated a criminal history. In 2011, he was on probation for burglary, prompted by his drug use, and marijuana possession offenses. His probation was revoked due to additional drug possession; he served time in prison and was later released on parole. In 2016, he was again convicted of possession of marijuana, with a sentence enhancement due to his prior controlled-substance conviction. He was granted a suspended sentence and is currently on probation. A condition of probation included drug treatment. Even though he was on probation, he admittedly used methamphetamine on almost a

---

[2] At the time of the termination hearing, the whereabouts of H.B. were unknown and she had not recently been in communication with her attorney.

daily basis starting in 2015 and stopping after about one year—when L.C. was born in 2016.

In August 2017, A.C.'s substance-abuse treatment provider reported that he had not been showing up for treatment. Attempts to obtain drug testing from him were unsuccessful. In October 2017, A.C. tested positive for both marijuana and methamphetamine. He admitted the marijuana use but denied using methamphetamine. He also admitted continual marijuana use while on probation to help him sleep.

On January 26, 2018, a month before the termination hearing, A.C. was again arrested for possession of marijuana, third or subsequent offense. A report of violation was filed, and his probation officer testified at the termination hearing that she is requesting that his probation be continued but, as a condition, that A.C. be required to reside at the residential treatment facility in Sioux City, which would last for at least two months. Based on this arrest, the county attorney also filed an application to revoke A.C.'s probation. The probation-revocation hearing was pending at the time of the termination hearing; if revoked, A.C. could be required to serve his prison sentence. The criminal charges from January 26, 2018, were also still pending at the time of the termination hearing. According to the probation officer, A.C. has not had a period of sobriety during his probation.

A.C. also admitted he continuously used methamphetamine and marijuana between January 26 and the morning of February 1, 2018, before entering drug treatment later on February 1. He was residing at the treatment facility at the time of the termination hearing, with discharge being imminent. This is A.C.'s fourth inpatient substance-abuse treatment since he was fifteen; none with lasting

success, although it appeared he would discharge from the program successfully. A.C. testified this inpatient treatment was different as he has been prescribed a drug, naltrexone, which he indicates has stopped his craving for drugs. He would have to be on this drug for approximately one year and also continue other outpatient treatment, including regular attendance at AA or NA meetings.

L.C. is currently living with A.C.'s mother. A.C. exercised supervised visitation with L.C. on a daily basis until February 1, when he entered inpatient drug treatment, with his mother providing the supervision. L.C. has not lived with A.C. since his removal in January 2017. K.C. remains placed in foster care with a family. K.C. has not at any time resided with A.C., but A.C. has exercised supervised visitation with him for three hours usually once a week. The court ordered continued services to facilitate reunification between A.C. and both children. A.C. testified he has established a bond with both children. However, the social worker did not believe the bond between A.C. and the children was so strong that it would be detrimental to them to terminate parental rights. A.C. was employed during 2017 until his employer shut down the business at the end of the year. A.C. has been receiving unemployment compensation since that time and acknowledges this is not adequate to support him and the children. Due to his possession convictions, A.C. does not currently have a valid driver's license, although he does qualify for a work permit.

K.C.'s foster family expressed an interest in adopting him and stated they would facilitate a continuing relationship between L.C. and K.C. A.C.'s mother has indicated that she would be willing to adopt L.C., but she does not want to adopt K.C., even though that would keep the siblings together. It is the recommendation

of DHS that the parental rights be terminated because A.C. is not able to parent these children on his own.

On March 21, the court filed its order establishing permanency and terminating A.C.'s and H.B.'s parental rights as to both children. A.C. filed a timely notice of appeal.[3]

**IV. Discussion.**

**A. Statutory Grounds for Termination.**

As noted, on our de novo review, we need find only one of the statutory bases supported by clear and convincing evidence to affirm the district court's order of termination. *A.B.*, 815 N.W.2d at 774. The district court determined that termination of A.C.'s parental rights was proved by clear and convincing evidence under both subsection 232.116(1)(h) and (*l*). Since we first address section 232.116(1)(h) and find it is supported by clear and convincing evidence, it is not necessary for us to address A.C.'s arguments regarding section 232.116(1)(*l*).[4]

Iowa Code section 232.116(1)(h) requires the State prove the following by clear and convincing evidence for the court to terminate parental rights:

> (1) The child is three years of age or younger.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months,

---

[3] H.B. has not appealed the termination of her parental rights.

[4] A.C. challenges the finding required under subparagraph 2 of Iowa Code section 232.116(1)(*l*), that he "has a severe substance-related disorder and presents a danger to self or others as evidenced by prior acts." He contends that to make such a finding the State was required to present evidence that he had a diagnosis of a severe substance-related disorder under the diagnostic and statistical manual of psychiatric disorders of the American Psychiatric Association, commonly referred to as DSM-5. He cites *In re L.S.*, Nos. 14-1026, 14-1080, 2014 WL 5252948, at *5 (Iowa Ct. App. Oct. 15, 2014), in support. Since we find termination was appropriate under section 232.116(1)(h), we do not need to address this challenge.

or for the last six consecutive months and any trial period at home has been less than thirty days.

      (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

The district court found as follows:

      There is clear and convincing evidence that [L.C.] and [K.C.] are both three years of age or younger and have been adjudicated as children in need of assistance pursuant to Iowa Code section 232.96. Both children have been removed from the physical custody of their parents for at least six months of the last twelve months, or for the last six consecutive months. There is clear and convincing evidence that at the present time the children cannot be returned to the custody of their parents as provided in section 232.102, all within the scope and meaning of Iowa Code section 232.116(1)(h).

A.C. concedes the State has proved the first three elements. He challenges the fourth: whether L.C. and K.C. could be returned to his custody under section 232.102. The supreme court has interpreted this requirement as returning a child to the parent at the time of the termination hearing; not some point in the future. *See* Iowa Code § 232.116(1)(h)(4); *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) ("Section 232.116(1)(h) provides that termination may be ordered when there is clear and convincing evidence that a child under the age of three who has been adjudicated a CINA and removed from the parents' care for at least the last six consecutive months cannot be returned to the parents' custody at the time of the termination hearing."); *see also A.M.*, 843 N.W.2d at 111.

We agree with the district court that L.C. and K.C. could not be returned to A.C.'s custody at the time of the termination hearing. He had not yet been discharged from his inpatient drug treatment, which was to last four to six weeks. He was facing a probation revocation, and his probation officer was recommending, at a minimum, placement at a residential treatment facility for at

least two months; the State was recommending a prison sentence. A.C. also still had pending criminal charges of possession of controlled substances, as a third or subsequent offense.[5] Even more concerning than these matters—which he has created by his actions and has little or no control over how they might resolve and cloud A.C.'s immediate future—is his lengthy and uncontrolled substance abuse. A court cannot deprive children of permanency, after the State has proved a ground for termination of parental rights, by hoping someday a parent will learn to be a parent and be able to provide a stable home for the children. *A.M.*, 843 N.W.2d at 112. In considering "what the future likely holds for the child if returned to his or her parents," we gain insight from "evidence of the parent's past performance, for that performance may be indicative of the quality of the future care that parent is capable of providing." *In re Dameron*, 306 N.W.2d 743, 745 (Iowa 1981). As testified by the social worker, the State provided services and gave A.C. a chance to prove he could parent, but he could not move forward due to his continued substance abuse. His inability to maintain sobriety does not indicate that he would have the ability to parent two children under the age of two years on a full-time basis.

### B. Best Interests of Child.

The court must next consider the children's best interests as provided by section 232.116(2), which requires the court to "give primary consideration to the child[ren]'s safety, to the best placement for furthering the long-term nurturing and

---

[5] Under Iowa Code section 124.401(5), a third or subsequent possession of marijuana is an aggravated misdemeanor and subjects A.C. to a potential prison sentence not to exceed two years.

growth of the child[ren], and to the physical, mental, and emotional condition and needs of the child[ren]." Iowa Code § 232.116(2); *P.L.*, 778 N.W.2d at 37.. The juvenile court addressed this requirement and for the reasons set forth properly determined termination is in the best interests of these children.

A.C. had more than a year of services to rectify the concerns that led to L.C.'s, and then K.C.'s, removals. He has continued to demonstrate that he has not adequately addressed the substance-abuse concerns that caused the children's removals. Both children have done well in their respective placements. The paternal grandmother has provided for L.C.'s needs since his placement with her over a year ago and appears willing to continue in that role. K.C. has been placed with the foster family since he was two days old. The family has developed a bond and relationship with K.C., and he has integrated into that family. He is with the only daily family unit he has ever known. The foster family has expressed a desire to adopt K.C. if he becomes available for adoption. That family indicates it would also work with the paternal grandmother to maintain a sibling relationship between L.C. and K.C.

A.C. has not demonstrated the ability to maintain sobriety long enough to provide L.C. and K.C. a safe, long-term home environment that would further their nurturing and growth while also addressing their physical, mental, and emotional needs. A.C. expresses concerns that the children will be separated. The sibling bond and the prospect that siblings will be adopted separately is a relevant factor in considering their best interests. Wherever possible, siblings should be kept together. *See in re L.B.T.*, 318 N.W.2d 200, 202 (Iowa 1982). Here, due to the conduct of the parents, the children have never lived together at any point in their

lives. In addition, the foster parents and paternal grandmother have expressed a commitment to maintaining contact between the siblings. And the paramount concern is their best interests, which are best served by giving them permanent, safe, and stable homes. *See id.* at 201.

After our review, we agree with the juvenile court's analysis.

**C. Exceptions to Termination—232.116(3).**

We also find there are no permissive considerations weighing against the termination of the father's parental rights. *See* Iowa Code § 232.116(3); *In re R.M.*, No. 17-0174, 2017 WL 1278382, at *3 (Iowa Ct. App. Apr. 5, 2017). Under section 232.116(3) the court "need not terminate" parental rights if the court finds any of five statutory conditions have been met. "A finding of any of these factors allows the court to avoid terminating parental rights, but the factors 'are permissive, not mandatory.'" *In re A.S.*, 906 N.W.2d 467, 475 (Iowa 2018) (quoting *A.M.*, 843 N.W.2d at 113). The juvenile court considered this requirement and concluded that application of none of these exceptions was warranted under the facts of this case. It determined that the only exceptions arguably applicable to L.C. were subsections 232.116(3)(a) and (c) and to K.C. subsection (c).

Section 232.116(3)(a) can be applied when "[a] relative has legal custody of the child." L.C.'s paternal grandmother does have custody of him and has since his removal in January 2017. But we agree with the juvenile court that for the reasons discussed above, this exception should not be applied. A.C. has unresolved substance-abuse issues and the best interests of these young children require permanency; we will not apply the exception to prevent termination.

Section 232.116(3)(c) can be applied when "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." The record does not contain clear and convincing evidence to support this exception. A.C. testified he had a bond with L.C., and the juvenile court found a bond existed. A.C. also testified he was developing a bond with K.C. But, given his ongoing substance-abuse issues and the length of time the children have been out of his care—or in the case of K.C., that he has never been in his care—we conclude termination of A.C.'s parental rights would not be detrimental to either L.C. or K.C.

**D. Additional Six Months and Guardianship**

A.C. contends the court should have granted him six additional months to work toward reunification. During this six months, he believes K.C. should also be placed in a guardianship so that at the end of six months, he would have both L.C. and K.C. in his custody. "[A] guardianship is not a legally preferable alternative to termination." *A.S.*, 906 N.W.2d at 477 (citing *In re B.T.*, 894 N.W.2d 29, 32 (Iowa Ct. App. 2017)). After a review of the record, we agree with the juvenile court that a six-month delay is not in the best interest of the children.

The court may continue placement of the child for an additional six months if it finds "specific factors, conditions, or expected behavioral changes" that lead it to conclude "the need for removal . . . will no longer exist at the end of the additional six-month period." Iowa Code § 232.104(2)(b). In this case, given A.C.'s long history of drug use, failed drug treatment, and admitted continuous use of drugs, there is no reason to believe the situation will be any different after six months. We are not persuaded by his argument and testimony that his newly prescribed

medication will help him succeed where three prior treatment attempts, incarceration, and well over a year's removal of his children failed to help him achieve even day-to-day sobriety. Further, we do not ask children of a tender age "to continuously wait for a stable biological parent." *D.W.*, 791 N.W.2d at 707.

After our complete review, we also agree with the juvenile court's conclusion that a guardianship under Iowa Code section 232.104(2)(d) would not be appropriate under the facts of this case.[6] L.C. and K.C. deserve the permanency that can only be accomplished by terminating their parents' parental rights. Six additional months would not change the outcome in this case when the same concerns exist now as did when the children were removed from their parents' custody. We agree placing either child with one or the other paternal grandparents is not an appropriate permanency plan for the next six months to see if A.C. is then capable of providing a home for these children.

**AFFIRMED.**

---

[6] We address this issue raised by A.C. on appeal even though it was not squarely raised in the termination hearing. There is testimony regarding the possibility of a guardianship, but the father did not raise it, nor did the district court rule on such a request.