# IN THE COURT OF APPEALS OF IOWA

No. 18-1725
Filed December 5, 2018

**IN THE INTEREST OF L.S.,**
**Minor Child,**

**S.S.-W., Mother,**
 Appellant.
_____

 Appeal from the Iowa District Court for Polk County, Susan Cox, District
Associate Judge.


 A mother appeals the termination of her parental rights to her minor child.
**AFFIRMED.**


 Zachary C. Priebe of Jeff Carter Law Offices, PC, Des Moines, for appellant
mother.

 Thomas J. Miller, Attorney General, and Anagha Dixit, Assistant Attorney
General, for appellee State.

 Brent M. Pattison of Drake Legal Clinic, Des Moines, guardian ad litem for
minor child.


 Considered by Tabor, P.J., and Mullins and Bower, JJ.

**MULLINS, Judge.**

The child in interest was born in October 2017. At this time, the mother was a juvenile and residing in a youth detention center as a result of juvenile delinquency proceedings; termination proceedings were underway as to another of the mother's children.[1] A few days after the child's birth, the State sought and obtained removal and filed a child-in-need-of-assistance (CINA) petition. The juvenile court placed the child in the legal custody of the Iowa Department of Human Services (DHS). The child was immediately placed in foster care. The child was adjudicated a CINA in November.

In late October, the mother was discharged from the youth detention center and moved into Ruth Harbor, a shelter that provides assistance to young mothers and their children. She also began attending therapy appointments and parenting classes. Supervised visitations with the child at issue began in early November. In December, as a result of the mother's progress, DHS decided she would be allowed semi-supervised visitation. In January 2018, the mother chose to leave Ruth Harbor, despite the fact that she was on the brink of reunification with the child in that facility. She was then placed in a supervised apartment living program. The mother's participation in therapy waned after her departure from Ruth Harbor.

In March 2018, an incident occurred in which the child almost died from choking on a piece of candy while in the mother's care during a visit. The mother blamed the incident on someone else. The mother's visits with the child reverted to fully supervised. A subsequent child-abuse assessment was founded against

---

[1] The mother's parental rights as to her other child were ultimately terminated in November 2017 pursuant to Iowa Code section 232.116(1)(h) (2017).

the mother. By April, despite attending parenting classes and receiving other services for several months, the mother was still unable to exhibit the skills necessary to parent or care for a young child. In a May 2018 permanency order, the juvenile court directed the State to initiate termination proceedings. The State filed its petition in June. In July, visitations were suspended as a result of the mother's threatening behavior.

The concerns throughout the pendency of these proceedings have related to the mother's mental-health issues, aggression, inability to understand the child's basic needs, and tendency to blame others for her shortcomings as a parent. Although the mother has made some progress in other areas, the main issues have not been resolved. Between May 2018 and the time of the termination hearing, the mother generally discontinued pursuing mental-health treatment, although she did schedule a few appointments to take place in the weeks leading up to the termination hearing. At the time of the termination hearing in August, the mother had recently obtained employment, moved into a suitable two-bedroom apartment, and was pursuing her CORE diploma.[2] The child has been in the same foster-care placement since shortly after his birth. He is thriving in his current placement and his foster parents are willing to adopt him. The foster mother testified she would be willing to continue to allow contact between the mother and the child. At the time of the termination hearing, the mother was five months pregnant with a third child.

---

[2] The record does not disclose what a CORE diploma is.

Following a hearing, the juvenile court terminated the mother's parental rights under Iowa Code section 232.116(1)(g) and (h) (2018). The mother appeals this ruling. She challenges the sufficiency of the evidence to support termination, argues termination is not in the best interests of the child, and contends the statutory exception to termination contained in Iowa Code section 232.116(3)(c) should be applied to preclude termination.

Appellate review of termination-of-parental-rights proceedings is de novo. *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018) (quoting *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014)). "We are not bound by the juvenile court's findings of fact, but we do give them weight, especially in assessing the credibility of witnesses." *Id.* (quoting *A.M.*, 843 N.W.2d at 110). Our primary consideration is the best interests of the child. *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006).

First, the mother contends the State failed to meet its burden for termination under Iowa Code section 232.116(1)(g) and (h). "On appeal, we may affirm the juvenile court's termination order on any ground that we find supported by clear and convincing evidence." *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010). As to termination under paragraph (h), the mother only challenges the State's establishment of the final element of that provision—that the child could not be returned to her care at the time of the termination hearing. *See* Iowa Code § 232.116(1)(h)(4) (requiring "clear and convincing evidence that the child cannot be returned to the custody of the child's parents . . . at the present time"); *D.W.*, 791 N.W.2d at 707 (interpreting the statutory language "at the present time" to mean "at the time of the termination hearing"). On this issue, the mother simply points to the facts that she "has an appropriate apartment in a safe neighborhood,"

which "is equipped to suit the needs of her infant child"; she has maintained employment for three months; and she has the financial capacity to care for the child. We fully acknowledge the mother has been able to create a physical environment that would be appropriate for a child, and we commend the mother for obtaining employment. However, we find the evidence to be clear and convincing that the mother is unable to meet the basic needs and provide appropriate care for the child. The mother lives alone in her new apartment. If the child had been returned to the mother's care at the time of the termination hearing, it would have been only the two of them living in the apartment. The record clearly indicates the mother cannot consistently provide for the safety of this child without the assistance and supervision of others. Upon our de novo review of the record, we conclude the State met its burden to prove by clear and convincing evidence that the child could not be returned to the mother's care at the time of the termination hearing.

Next, the mother argues termination of her parental rights is not in the child's best interests. In support of her position, the mother points to her current pregnancy and argues siblings should be kept together whenever possible. We agree that children should be kept together whenever possible. *See In re L.B.T.*, 318 N.W.2d 200, 202 (Iowa 1982). However, this sentiment does not preclude termination on best-interests grounds in situations such as this, where the siblings have never met and share no relationship, and the foster parents or potential adoptive parents have expressed an intention to maintain contact between the child and the child's biological family following termination. *See, e.g.*, *In re L.C.*, No. 18-0531, 2018 WL 4361052, at *5 (Iowa Ct. App. Sept. 12, 2018); *In re T.B.*,

No. 18-0618, 2018 WL 3057948, at *4 (Iowa Ct. App. June 20, 2018); *In re C.C.*, No. 16-1311, 2016 WL 5407947, at *4 (Iowa Ct. App. Sept. 28, 2016).

Furthermore, in determining whether termination is in the best interests of a child, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). This child has been in the same foster-care placement since shortly after his birth. This is the only home this child knows, he is thriving, and the foster parents are prepared to adopt the child and provide continued stability and permanency. Continued stability and permanency in this home are in this child's best interests. *See id.* § 232.116(2)(b); *cf. In re M.W.*, 876 N.W.2d 212, 224–25 (2016) (concluding termination was in best interests of children where children were well-adjusted to home with their foster parents, the foster parents were "able to provide for their physical, emotional, and financial needs," and the foster parents were prepared to adopt the children).

Finally, the mother argues the statutory exception contained in Iowa Code section 232.116(3)(c) should be applied to preclude termination. "The court need not terminate the relationship between the parent and child if . . . [t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." Iowa Code § 232.116(3)(c). The application of the statutory exceptions to termination is "permissive not mandatory." *M.W.* 876 N.W.2d at 225 (quoting *A.M.*, 843 N.W.2d at 113). "[T]he parent resisting termination bears the burden to establish an exception to termination." *A.S.*, 906 N.W.2d at 476. The evidence presented

reveals the mother and child share a bond. However, no evidence was presented that "termination would be detrimental to the child" as a result of the severance of that bond. Iowa Code § 232.116(3)(c). Instead, the record shows the effect termination will have on the child will be limited at most, given the child's very young age and early removal from his mother's care. We conclude the mother failed to meet her burden to establish the statutory exception to termination. *See A.S.*, 906 N.W.2d at 476. In the alternative, we conclude the application of the permissive exception to termination would be contrary to the child's best interests.

Upon our de novo review, we affirm the termination of the mother's parental rights.

**AFFIRMED.**